[L. A. No. 26745.  In Bank.  May 15, 1962.]

ELMER L. FERREL, Plaintiff and Appellant, v. SAFWAY STEEL SCAFFOLDS et al., Defendants and Respondents.

Edgar Simon and Jean Wunderlich for Plaintiff and Appellant.

Spray, Gould & Bowers, Philip L. Bradish, Henry E. Kappler, Schell, Delamer & Loring and Lee A. Solomon for Defendants and Respondents.

GIBSON, C. J.—Plaintiff, an employee of an independent contractor, Bay View Welding Works, was injured as the result of a fall from a scaffold he was using while repairing a storage tank owned by defendant, Vegetable Oil Products Company, Inc. He brought this action for damages against Vegetable Oil and joined as defendants Safway Steel Products, Inc., and its division, Safway Steel Scaffolds, which leased the scaffold to Bay View.

The jury found in favor of the Safway defendants, and the sole contention raised on appeal with respect to them is that the court erroneously failed to instruct regarding the applicability to them of safety provisions of the Labor Code and safety orders issued under those provisions. Plaintiff initially requested instructions on that subject but withdrew them during the course of a lengthy discussion between court and counsel covering about 100 pages of the transcript. He now asserts that the withdrawal was conditional and that the condition was not met, but the record does not support this assertion. The judgment for these defendants must be affirmed.

A verdict was returned against Vegetable Oil. Upon motions by defendant the court entered judgment notwithstanding the

verdict as well as an order for a new trial to be effective only if the judgment notwithstanding the verdict is reversed and the new trial order is not appealed from, or if appealed from is affirmed.[1]

As we shall see, there was evidence to support the verdict against Vegetable Oil, and the court erred in entering the judgment notwithstanding the verdict. ██ However, the order granting a new trial must be affirmed since one of the grounds specified for the order was insufficiency of the evidence, and we cannot say as a matter of law that there was no substantial evidence warranting a judgment for Vegetable Oil. (*Brooks* v. *Metropolitan Life Ins. Co.,* 27 Cal.2d 305, 307 [163 P.2d 689].)

Vegetable Oil's tank, which was cylindrical in shape, made of metal, and about 40 feet high, was damaged by fire and an explosion a few months before the accident. The roof was partially torn away, and the sides were buckled inward and creased at several points. Vegetable Oil entered into a contract with Bay View for repair of the tank; the work was done by Bay View without direction or control by Vegetable Oil, and all equipment used was furnished by Bay View. There was no provision in the contract for the taking of precautions by Bay View in doing the job, and as far as appears none was taken or suggested by Vegetable Oil.

Bay View removed the top of the tank and did the repair work from the inside, using a towerlike structure called a scaffold which was equipped with wheels. The scaffold had supports at various levels, across which workmen could place planks as a platform to stand upon. In order to straighten the buckles and creases a device was used consisting of a pipe somewhat shorter than the diameter of the tank with a hydraulic jack attached to one end. This device increased in length as the handle of the jack was operated, and it was suspended horizontally by a cable from the boom of a crane so that it could be raised and lowered to a point where the metal was buckled. One end was placed against the inside of the tank's wall opposite the buckled metal, and the other forced the buckle outward when the device was expanded by

---

[1]Section 629 of the Code of Civil Procedure provides in part, "If the court grants the motion for judgment notwithstanding the verdict or of its own motion directs the entry of judgment notwithstanding the verdict and likewise grants the motion for a new trial, the order granting the new trial shall be effective only if, on appeal, the judgment notwithstanding the verdict is reversed, and the order granting a new trial is not appealed from or, if appealed from, is affirmed."

operation of the jack. A 5-foot steel bar was supplied for the purpose of assisting in the manipulation of the jack.

At the time of the accident the repairing of the tank had been in progress for a few days as described above. Plaintiff, an experienced boilermaker-welder, was one of the employees doing the work. He was standing at the 23-foot level of the scaffold, where a platform of three planks totaling 30 inches in width had been laid. He forced some buckled metal outward, using the jack and the 5-foot steel bar. When he retracted the jack, the buckle sprang inward again, and the steel bar struck him, knocking him to the ground. There is conflict in the evidence as to whether plaintiff fell inside or outside the framework of the scaffold. More planks could have been placed at the level where plaintiff was working, and there were no side railings at that level.

The testimony of a mechanical engineer who was called as an expert witness by plaintiff may be summarized as follows when taken in the light most favorable to plaintiff: Bay View's method of repairing the tank was not "standard practice," and the witness had never heard of the use of such a method. Whenever a tank like Vegetable Oil's is damaged in the manner involved here, repairing it in place is "unusually dangerous" to workmen. There is a danger that the tank will collapse because of the unstable condition of the damaged metal, and workmen, while "up there," cannot safely exert the leverage required to straighten the metal. Forcing the buckles outward from inside on a scaffold such as the one used by Bay View is dangerous because there is "spring back" in the buckles, which "will react with considerable force," and "[I]f there is a sudden movement of this steel which is very likely—this particular type of scaffold is very flimsy and it is subject to movement." Had the usual practice been followed, the repairs would have been made from outside the tank, the roof removed, a "stiffening ring" placed around the top of the tank, the sides braced against collapse, and adequate scaffolding welded to the side of the tank. The damaged plates of metal would then have been cut away and straightened on the ground before being replaced. The usual practice would in addition have required the use of quick-release safety belts.

The mechanical engineer also testified that at the direction of his employer, a company which manufactured and repaired storage tanks, he examined Vegetable Oil's tank before the accident and submitted a report to his employer recommend-

ing that the roof and the upper part of the tank be entirely replaced, rather than repaired, because repairs would be ''too difficult and dangerous.'' It does not appear whether his employer had been hired by Vegetable Oil to ascertain the nature of the damage and the feasibility of repair or was merely acting for itself as a contractor interested in submitting a bid on the work to be done. There is no evidence that Vegetable Oil was apprised before the accident of the mechanical engineer's views as to the danger involved in repairing the tank in place.

The plant engineer of Vegetable Oil testified that, before the repair work began, he and Vegetable Oil's maintenance superintendent surveyed the damage, that it was his duty to inspect the tank in order to determine whether it should be repaired, and that he formed the opinion that repairs could be made.

A vice president of Vegetable Oil looked into the tank on more than one occasion while the repair work was in progress and observed the tools and equipment inside the tank. He saw the workmen on various levels of the scaffold, standing within a few feet of buckled metal which they were pushing outward with the device described above.

There was also testimony that Vegetable Oil's maintenance superintendent, plant superintendent, and plant engineer looked into the tank while the work was being done. The maintenance superintendent did so on the day of the accident, before the accident happened. He and the plant superintendent were members of a committee which was concerned with safety procedures at Vegetable Oil's plant.

An owner of premises may be liable to an employee of an independent contractor under the rule set forth in section 413 of the Restatement of Torts (*Woolen* v. *Aerojet General Corp., ante,* pp. 407, 410-411 [20 Cal.Rptr. 12, 369 P.2d 708]), and there is sufficient evidence to bring the present case within that rule. Section 413 reads: ''One who employs an independent contractor to do work which the employer should recognize as necessarily creating, during its progress, conditions containing an unreasonable risk of bodily harm to others unless special precautions are taken, is subject to liability for bodily harm caused to them by the absence of such precautions, if the employer (a) fails to provide in the contract that the contractor shall take such precautions (as to which see § 416), or (b) fails to exercise reasonable care

to provide in some other manner for the taking of such precautions."

It is pointed out in comment (b) to the section: "Although the employer at the time he lets the contract has no reason to anticipate that conditions will arise which require special precautions to be taken, if in fact such conditions do arise and he knows or should know of them, he is then required to act in the manner required by the rule stated in this Section."

█ The evidence warrants a finding that Bay View's work was necessarily dangerous to the workmen in the absence of precautions and that Vegetable Oil did not provide, by its contract or otherwise, for the taking of precautions. Vegetable Oil asserts that it could not reasonably have been expected to know of the danger and that plaintiff, on the other hand, must have been fully aware of it. Although the evidence is sufficient to permit inferences favorable to defendant in these respects, we cannot say that such inferences are compelled as a matter of law on the record before us, and the determination of these matters must be left to the trier of fact.

The judgment in favor of the Safway defendants is affirmed, the judgment for Vegetable Oil notwithstanding the verdict is reversed, and the order granting Vegetable Oil's motion for a new trial is affirmed.

Traynor, J., Schauer, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.