[Civ. No. 2449. Fifth Dist. Nov. 26, 1975.]

RALPH HOLMAN, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

COUNSEL

Sims & Solomon and Gabriel W. Solomon for Plaintiff and Appellant.

Russ, McConnell & Tarkington, Wilbur J. Russ and Paul W. Daniels for Defendant and Respondent.

OPINION

FRANSON, J.—

## STATEMENT OF THE CASE

This appeal involves the propriety of the granting of a nonsuit on two causes of action and the sustaining of a general demurrer to a third cause of action in a complaint for personal injuries by appellant Holman against the respondent State of California. The first cause of action is based on a theory of vicarious liability of respondent as the employer of an independent contractor for the negligent failure of the contractor to take special precautions. The second cause of action is based on two theories: first, a direct liability of respondent as a statutory employer under Labor Code section 6304 in that it failed to provide appellant with a safe place of employment; second, a direct liability under section 414 of the Restatement Second of Torts, for negligence in exercising control by an employer over work entrusted to an independent contractor. The third cause of action alleges respondent's negligence in selecting and retaining an incompetent and negligent contractor.

A general demurrer to the first two causes of action was overruled but was sustained as to the third cause of action with leave to amend. No amendment was filed, and the third cause of action was ordered dismissed. The case went to trial before a jury on the first two causes of action; at the close of appellant's case-in-chief a nonsuit was granted in favor of respondent on both causes of action. Thereafter, a final judgment was entered in favor of respondent on the three causes of action.

## FACTS

In accordance with the rule for reviewing a judgment of nonsuit, we will present the facts on the first two causes of action in a light most favorable to appellant.

On December 24, 1969, appellant, a heavy-equipment operator, sustained severe and near-fatal injuries when he slipped and fell into an unshielded, high-speed, revolving driveshaft of a Caterpillar Model 630 tractor-scraper earthmoving machine. The machine was owned by appellant's employer, E. C. Young & Sons (hereinafter "Young"), who was employed by respondent as the general contractor for construction of a 14.8-mile portion of Interstate 5 in Kern County known as the Lost Hills segment. The driveshaft was unguarded in direct violation of the California Division of Industrial Safety, General Industry Safety Orders (Cal. Admin. Code, tit. 8, art. 41, § 3517, now § 4002(a)) which provided that: "Hazardous revolving or reciprocating parts in any machine not guarded by the frame of the machine or by location shall be guarded."

Appellant testified that he went to work for Young in the middle of 1968 when Young was the contractor on another section of the freeway known as the Buttonwillow job. When the accident occurred, Young had been working on the Lost Hills section for three or four months. Appellant had operated various pieces of heavy equipment for Young including Young's three Caterpillar Model 630's. He had operated the 630 on which he was injured for three to four days prior to the accident. According to appellant, from the time he began operating the 630's until the day he was injured, none of the 630's had shields over their driveshafts.

The tractor on which appellant was injured had something wrong with its transmission so that it blew oil out of the dipstick hole. Because the transmission would run low on oil, it had to be checked several times a day. The only way to check the oil was to shut the engine off and check it with the dipstick or to look to see if oil was bubbling out of the dipstick hole when the engine was running. When the oil ran low, a grease monkey at the borrow pit would refill the transmission. The borrow pit was an area 500 feet from the roadway where the contractor obtained fill-dirt for the project.

On the day of the accident, appellant drove the 630 to the borrow pit for another load of dirt. Because he had to wait for another rig to get out

of the way, he decided to check the transmission oil. He stood up on the deck on which the seat was located and turned around; he apparently slipped and fell toward the rear of the tractor and became entangled in the exposed three-foot section of the driveshaft.

Appellant testified that the exposed driveshaft could be seen from the ground. He said respondent's engineering staff was present daily in and about the 630's. He and the other equipment operators often complained to Young's mechanics about the lack of shields on the tractors, but he had never complained directly to Mr. Young or "the bosses."

Appellant said the general condition of Young's equipment was "pretty bad." They had to be push-started and once they started nothing worked well. They wouldn't go into gear, the tires were bad, and the steering on some machines was bad. The 630's had to be left running at lunch time because they wouldn't re-start without pushing.

Appellant knew Brownie Coleman, the union shop steward on the job. He said Coleman was constantly complaining about the condition of the equipment in the presence of respondent's engineering staff, but he couldn't remember if Coleman specifically complained of the lack of driveshaft shields.

Brownie Coleman testified that he was the local 12 operating engineers union steward on the Lost Hills freeway project when appellant was injured. As the union steward he was responsible for looking out for the safety of the men on the job. He said there were numerous state employees on the job with whom he often ate lunch. He said he observed many dangerous conditions on the job and that he frequently talked to the respondent's employees at lunch time about the conditions. He said he had talked with respondent's engineering staff about the exposed driveshafts on the 630's although he couldn't remember the dates of the conversations or the names of the people. He didn't know if all three 630's had exposed shafts when the job began, but all three were exposed when appellant was injured. He said Young was operating nothing but junk and that he, discussed with respondent's people the lack of seat belts, the lack of fenders and bad tires on the equipment. Four people were hurt before the seat belts eventually were installed. He asked respondent's engineering staff to take one piece of equipment off the job because of no fenders and "a little bit of everything," but the engineer said that if he shut down one piece of Young's equipment, he would have to shut them all down because they

were all unsafe. Coleman said the unguarded driveshafts could be seen from just walking around the equipment, that the resident engineering staff sometimes worked in close proximity to the 630's, and that there was nothing to prevent them from seeing the exposed driveshafts.

On cross-examination, Coleman repeated that he had requested respondent's staff to shut down equipment because of no seat belts, no fenders and bad tires. He said eventually a state official came to the job-site and required seat belts. He said one of Young's mechanics might have told him the guard had been removed from appellant's 630 four to five days before the accident and it was run over by another truck which made it impossible to put it back on; Coleman was equivocal about this statement. He told Young's mechanics about the missing driveshaft shields, but he admitted it was possible he didn't mention this condition to respondent's people on the job-site. Although he discussed the other deficiencies with respondent's staff, he did not talk to Mr. Koontz, respondent's chief resident engineer.

On re-direct, Coleman said he was not sure when the driveshaft shields were removed from the 630's; that he often worked closely with respondent's engineer, Clayton, and that Clayton sometimes gave directions to Young's employees.

Appellant introduced into evidence the basic contract with respondent and the standard specifications which were incorporated into the contract. The contract provided that Young would comply with all applicable safety laws and provide all necessary safety devices and protective equipment, and take any other safety precautions as the contractor or as the State Highway Department contracting officer determined to be reasonably necessary. The standard specifications in pertinent part provided that:

"Authority of Engineer. The [state] Engineer shall decide all questions which may arise as to the quality or acceptability of materials furnished and work performed and as to the manner of performance and rate of progress of the work; all questions which may arise as to the interpretation of the plans and specifications; all questions as to the acceptable fulfillment of the contract on the part of the Contractor; and all questions as to compensation. *His decision shall be final and he shall have*

*authority to enforce and make effective such decisions and orders which the Contractor fails to carry out promptly.* [Italics added.]

"...........................

"Superintendence. The Contractor shall designate in writing before starting work, an authorized representative who shall have the authority to represent and act for the Contractor.

"...........................

"Said authorized representative shall be present at the site of the work at all times while work is actually in progress on the contract. When work is not in progress and during periods when work is suspended, arrangements acceptable to the Engineer shall be made for any emergency work which may be required.

"Whenever the Contractor or his authorized representative is not present on any particular part of the work where it may be desired to give direction, orders will be given by the Engineer, which shall be received and obeyed by the superintendent or foreman who may have charge of the particular work in reference to which the orders are given.

"Any order given by the Engineer, not otherwise required by the specifications to be in writing, will on request of the Contractor, be given or confirmed by the Engineer in writing.

"...........................

"Inspection. The Engineer shall at all times have access to the work during its construction, and shall be furnished with every reasonable facility for ascertaining that the materials and the workmanship are in accordance with the requirements and intentions of these specifications, the special provisions, and the plans. All work done and all materials furnished shall be subject to his inspection.

"...........................

"Equipment and Plants. Only equipment and plants suitable to produce the quality of work and materials required will be permitted to operate on the project.

"...........................

"The Contractor shall provide adequate and suitable equipment and plants to meet the above requirements, and when ordered by the Engineer shall remove unsuitable equipment from the work and discontinue the operation of unsatisfactory plants.

". . . . . . . . . . . . . . . . . . .

"Character of Workmen. If any subcontractor or person employed by the Contractor shall appear to the Engineer to be incompetent or to act in a disorderly or improper manner, he shall be discharged immediately on the requisition of the Engineer, and such person shall not again be employed on the work.

". . . . . . . . . . . . . . . . . . .

"Safety Provisions. The Contractor shall conform to the rules and regulations pertaining to safety established by the California Division of Industrial Safety."

William Koontz testified he was the chief resident engineer for respondent and that he had five permanent assistants. His staff was thoroughly familiar with Young before the Lost Hills project was begun because Young was the contractor on the previous Buttonwillow section of freeway. Counsel for appellant read to Koontz the sections from the standard specifications that indicated the resident engineer had control over the contractor. Koontz said he was familiar with those sections and knew the standard specifications were a part of the contract. He was aware the specifications provided that the contractor would comply with all state safety regulations, but he thought he had no duty to see that Young followed those safety rules; however, if he did see a hazardous condition, he would call it to the contractor's attention. He felt he had no affirmative duty to inspect the contractor's equipment for safety violations. He was not aware of any safety program initiated by Young, and said there was no state employee assigned to safety responsibilities. Koontz said his staff worked in the vicinity of Young's equipment. He was aware Young did not provide his mechanics with a maintenance shop, so they basically maintained the equipment out of a truck.

Appellant offered evidence that when Mr. Young purchased the Caterpillar 630's there were no shields over the driveshafts. There was evidence that the driveshaft shield was a standard part readily available from the local Caterpillar dealer for $62.93.

Appellant offered proof that Young's chief mechanic would testify that the three 630 tractors were used on the Buttonwillow and Lost Hills jobs, that they had no driveshaft shields; that all of Young's equipment was in poor shape and in constant need of repair, that he was only authorized to "patch" the equipment, that some equipment had no brakes or fenders, had loose steering, the tires were seconds, and the equipment was extremely dangerous to operate. During the year he worked for Young he never saw a state safety man nor were any safety meetings ever held. Young compared unfavorably to other contractors. He said state staffers were on the job-sites and had access to the equipment.

Finally, appellant offered to call witnesses from the state Division of Industrial Safety who would testify that it adopted special safety orders for high-injury-risk industries and that the state had deemed the construction industry to be a high-injury-risk business.

## DISCUSSION

Preliminarily, we note that a nonsuit may be granted only when, disregarding conflicting evidence and giving to plaintiff's evidence all of the value to which it is legally entitled, and indulging in every legitimate inference which may be drawn from the evidence, the result is that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff. (*Stanford* v. *City of Ontario,* 6 Cal.3d 870, 874, fn. 1 [101 Cal.Rptr. 97, 495 P.2d 425].)

We also note that the general rule of nonliability of the employer of an independent contractor for the latter's negligence is subject to such wide exceptions that nonliability is now the exception. Policy considerations frequently command the imposition of liability. (4 Witkin, Summary of Cal. Law (8th ed.) Torts, § 657, p. 2937.) "Some of the principal [policy considerations] are that the enterprise, notwithstanding the employment of the independent contractor, remains the employer's because he is the party primarily to be benefited by it, that he selects the contractor, is free to insist upon one who is financially responsible, and to demand indemnity from him, that the insurance necessary to distribute the risk is properly a cost of the employer's business, and that the performance of the duty of care is of great importance to the public." (*Van Arsdale* v. *Hollinger,* 68 Cal.2d 245, 253 [66 Cal.Rptr. 20, 437 P.2d 508].)

We analyze the nonsuits and the demurrer with these principles in mind.

## FIRST CAUSE OF ACTION

█ Appellant's first cause of action is predicated on a theory of vicarious liability as provided in section 416 of the Restatement Second of Torts: "One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise." (See also Rest. 2d Torts, § 427.)

While it is not essential that the work which the contractor is employed to do be in itself an extra hazardous or abnormally dangerous activity, or that it involves a high degree of risk to those in the immediate vicinity, it must involve some special hazard resulting from the nature of the work done which in turn calls for special precautions. This principle is explained: "[I]f a contractor is employed to transport the employer's goods by truck over the public highway, the employer is not liable for the contractor's failure to inspect the brakes on his truck, or for his driving in excess of the speed limit, because the risk is in no way a peculiar one, and only an ordinary precaution is called for. But if the contractor is employed to transport giant logs weighing several tons over the highway, the employer will be subject to liability for the contractor's failure to take special precautions to anchor them on his trucks." (Rest. 2d Torts, § 416, com. d.)

The cases generally recognize this distinction. In *Van Arsdale* v. *Hollinger, supra,* 68 Cal.2d 245, the plaintiff was employed by a paving company which had contracted with the City of Los Angeles to make street improvements. As plaintiff was working at his job of eradicating the line from the street, he was hit from behind by a car. There was no flagman present and the plaintiff was working beyond the safety barricades without a red safety coat in violation of the paving company's contract with the city. After holding that employees of independent contractors come within the class of persons protected by section 416 of the Restatement Second of Torts, the court stated: " . . . the conditions precedent to the nondelegable duty imposed by section 416 appear as a matter of law. The undertaking here was to eradicate the markings of the

white lines on a busy street while one of the three lanes was kept open to traffic. Absent special precautions to keep the traffic proceeding on the open lane from going into the other lanes, the work was highly dangerous. The necessity for such precautions was inherent in the work and was obvious before the work commenced. The contract of the city provided for special precautions, but under the plain language of section 416 this does not satisfy its duty." (68 Cal.2d at p. 254.)

In *Anderson* v. *L. C. Smith Constr.,* 276 Cal.App.2d 436 [81 Cal.Rptr. 73], it was held that backing a truck loaded with asphalt on a highway construction job without a warning device constituted dangerous work in the absence of special precautions. The evidence showed that the deceased (an employee of the subcontractor), at the time he was killed, was engaged in marking a chalkline for the asphalt paving machine to follow; that the paving operation required trucks to dump loads of asphalt into the hopper on the front part of the machine; to accomplish this the trucks loaded with asphalt would pull in some distance ahead of the paving machine, stop, and then back up to the paving machine which would be moving slowly forward putting down a layer of asphalt. Clearly, the nature of the work involved a special hazard to plaintiff which was foreseeable to the defendant general contractor.

Other examples of work which have been held to create a peculiar risk of physical harm absent special precautions are: Cement work on a bridge 20 feet high with no scaffolding or railings—worker fell from bridge (*Fonseca* v. *County of Orange,* 28 Cal.App.3d 361 [104 Cal.Rptr. 566]); building bridge over high-voltage wires—worker injured when boom of crane touched wire (*Walker* v. *Capistrano Saddle Club,* 12 Cal.App.3d 894 [90 Cal.Rptr. 912]); repairing a metal tank from the inside by forcing buckled metal outward with the risk that the metal would spring inward and injure a workman (*Ferrel* v. *Safway Steel Scaffolds,* 57 Cal.2d 651 [21 Cal.Rptr. 575, 371 P.2d 311]); painting the inside of a tank with the risk of an explosion because of inadequate ventilation (*Woolen* v. *Aerojet General Corp.,* 57 Cal.2d 407 [20 Cal.Rptr. 12, 369 P.2d 708]); building concrete wall and floor, without railings, to a height of 10 feet with the risk that a workman might fall or be pushed from the wall (*Morehouse* v. *Taubman Co.,* 5 Cal.App.3d 548 [85 Cal.Rptr. 308]); digging a trench without adequate bracing with the risk that a workman might be injured by a cave-in (*Widman* v. *Rossmoor Sanitation, Inc.,* 19 Cal.App.3d 734 [97 Cal.Rptr. 52]; *Delgado* v. *W. C. Garcia & Associates,* 212 Cal.App.2d 5 [27 Cal.Rptr. 613]); erecting and cross-girdering 30-foot steel columns for a water tower without safety

equipment to keep plaintiff from falling off tower (*Stilson* v. *Moulton-Niguel Water Dist.*, 21 Cal.App.3d 928 [98 Cal.Rptr. 914]).

In all of the cases which have imposed a vicarious liability under section 416, there is a direct causal relationship between a peculiar risk inherent in the work to be performed and the plaintiff's injuries. It is the foreseeability of that special risk which justifies the imposition of liability. (See *Addison* v. *Eagle Lake Lumber Co.*, 47 Cal.App.3d 394, 402-403 [120 Cal.Rptr. 737]; Rest. 2d Torts, § 416, com. e.)

On the other hand, where the injury is caused by a risk apart from the work itself, such as a defect in the equipment furnished by the contractor, the employer is not vicariously liable. For example, in *McDonald* v. *Shell Oil Co.*, 44 Cal.2d 785 [285 P.2d 902], a nonsuit was upheld in an action against an oil company for injury sustained by an employee of an independent contractor whom the oil company had hired to recover well casing. Plaintiff's injury occurred while working with three other employees on a well-pulling rig. The rig consisted of a "cathead" which is a revolving spool, and a "catline" which is a piece of manila rope about an inch-and-a-half thick; the catline had a hook on one end and the other end was wrapped around the cathead. The cathead had no safety clamp or lock to stop the lowering or raising operation. Steel elevators weighing approximately 1,200 pounds were suspended on the catline about 24 feet in the air at the top of the drill pipe. The friction of the cathead caused the catline to burn and break and the suspended elevators fell on plaintiff, causing his injury.

The court held that an owner is not liable for injuries resulting from defective equipment used by the contractor unless the owner supplied the equipment or had the privilege of selecting it or the materials out of which it is made, or unless he exercised active control over the operations of the equipment. (*McDonald* v. *Shell Oil Co.*, *supra*, 44 Cal.2d 785, at pp. 788-789.)

In *Hard* v. *Hollywood Turf Club*, 112 Cal.App.2d 263 [246 P.2d 716], a workman was hurt when a defective scaffold supplied by his employer (subcontractor) collapsed. In denying recovery against the owner the court held there was nothing inherently dangerous in doing work on a high scaffold assuming the scaffold was safe; the workman was hurt only because the scaffold was defective and it had been made and supplied by the subcontractor and not by the owner.

Hypothesizing from these cases, if appellant's injuries had resulted from a dangerous condition of the land over which he had to drive his tractor, or from a condition of the earthfill operations in which he used his tractor (such as a steep grade, rocky terrain or a defect in the fill), causing appellant to be thrown from the tractor or causing the tractor to tip over, respondent would be vicariously liable for injuries suffered as a result of Young's failure to have seat belts or a rollbar on the tractor. The peculiar risk of such an incident happening during the course of moving dirt over the hazardous terrain would be foreseeable and would constitute a special risk in the work to be performed and to be guarded against. However, as appellant's injuries were caused solely by a defect in Young's equipment unrelated to any risk inherent in grading and surfacing the highway, as a matter of law vicarious liability under section 416 does not arise. The nonsuit was properly granted as to the first cause of action.

## Second Cause Of Action

Appellant's second cause of action is entitled, "Statutory Employer's Negligent Failure to Provide Safe Equipment and Safe Place of Employment." Appellant refers to Labor Code section 6304 et seq.[1] and argues that Young and respondent were in joint control of the job-site, that respondent had the right, duty and power to control the details of Young's performance of the contract, that respondent negligently failed to provide a safe place of work in that appellant was permitted to work in close proximity to the unguarded driveshaft.

At trial, in resisting the nonsuit motion, appellant also relied on an alternate theory of agency as provided in section 414 of the Restatement Second of Torts: "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

---

[1]Labor Code sections 6304, 6400 and 6401 require an employer to provide a reasonably safe place of employment and to furnish safety devices, safeguards or other means of protection reasonably adequate to insure safety. Labor Code section 6304, in effect at the time of the injury, defined "employer" as including every person having direction, management, control or custody of any employment, place of employment or any employee. Section 6304 was amended effective April 1, 1972, to delete the language referring to persons in control and to restore the ordinary definition of employer as contained in Labor Code section 3300.

The rationale to section 414 is explained in comment a: "If the employer of an independent contractor retains control over the operative detail of doing any part of the work, he is subject to liability for the negligence of the employees of the contractor engaged therein, under the rules of that part of the law of Agency which deals with the relation of master and servant. *The employer may, however, retain a control less than that which is necessary to subject him to liability as master. He may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others. Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others.*" (Italics added.)

The essence of a negligence action is the existence of a duty of care toward others and a breach of that duty. "While the question whether one owes a duty to another must be decided on a case-by-case basis, every case is governed by the [general] rule . . . that all persons are required to use ordinary care to prevent others from being injured as the result of their conduct." (*Weirum* v. *RKO General, Inc.,* 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36]; *Hilyar* v. *Union Ice Co.,* 45 Cal.2d 30, 36 [286 P.2d 21].) Foreseeability of the risk is the primary consideration in establishing a duty of care. (*Dillon* v. *Legg,* 68 Cal.2d 728, 739 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].) Thus, the question is whether appellant's evidence, viewed in a light most favorable to him, established facts from which the jury could have inferred a duty on the part of respondent to take reasonable precautions to prevent injury to appellant from the operation of the tractor.

█ Normally, the employer of an independent contractor is under no obligation to inspect the contractor's equipment to see that it complies with safety regulations. (*Kuntz* v. *Del E. Webb Constr. Co.,* 57 Cal.2d 100, 107 [18 Cal.Rptr. 527, 368 P.2d 127].) Such a duty would place an onerous burden on the employer and would emasculate the independent contractual relationship. Insofar as the employer is a public entity this policy is reflected in the immunity provisions of Government Code sections 818.6 and 821.4 which provide that neither a public entity nor a public employee is liable for injury caused by a failure to make an inspection or by reason of making an inadequate or negligent inspection of any property other than the property of the public entity for the purpose of determining whether the property complies with or violates

any enactment or constitutes a hazard to health or safety. Thus, proof of facts sufficient to raise an inference of an employer-public entity's constructive knowledge of the dangerous condition of its contractor's equipment based on the entity's failure to inspect the equipment is insufficient as a matter of law to establish any liability toward those who are injured while working about the equipment.

■ However, appellant's evidence goes further. It is subject to the reasonable inference that respondent, through its engineers on the job, had *actual knowledge* of the dangerous condition of appellant's tractor. The chief resident engineer and his five assistants were constantly present on the job-site; they were familiar with Young's operations. Brownie Coleman testified he had talked with respondent's engineering staff about the exposed driveshafts on the tractor. There was evidence that the exposed driveshafts were visible to anyone working around the equipment. While this evidence was controverted it presented a factual question for the jury insofar as respondent's actual knowledge of the exposed driveshafts.[2]

The existence of a duty of care by an employer of an independent contractor towards his contractor's employees and others on the job requires an additional element: the retention of a certain degree of control by the employer over that part of the work which caused the injury. (*Kuntz* v. *Del E. Webb Constr. Co., supra,* 57 Cal.2d 100, 107; *Woolen* v. *Aerojet General Corp., supra,* 57 Cal.2d 407, 413; *Van Arsdale* v. *Hollinger, supra,* 68 Cal.2d 245; *Widman* v. *Rossmoor Sanitation, Inc., supra,* 19 Cal.App.3d 734; see also Rest. 2d Torts, § 414.)

In *Van Arsdale* v. *Hollinger, supra,* 68 Cal.2d 245, where the plaintiff—an employee of a paving contractor—was injured while eradicating traffic lanes on a busy street in Los Angeles, the court held that whether the city was a statutory employer was a question of fact for the jury because among other things the contract between the city and the paving contractor provided that the contractor should furnish fences, barriers and warning signs, as well as provide flagmen with red coats and flags and whatever other safeguards were necessary to prevent injury to

---

[2] By the term "actual knowledge" we mean notice of facts which would cause a reasonable employer to foresee injury to others if he failed to exercise his retained powers to compel the contractor to use safe equipment. Although the employer is under no affirmative duty to inspect his contractor's equipment (*Kuntz* v. *Del E. Webb. Constr. Co., supra,* 57 Cal.2d 100, 107), if he is told by others that the equipment is dangerous he has actual notice of facts which would cause a reasonable employer to investigate further.

the workmen. The contract stated that if the contractor failed to provide the safety equipment, the city could do so at the contractor's expense. The evidence further showed that a city inspector was present at all times to see that work was being performed according to the specifications, and the inspectors testified that they understood they could tell the contractor to correct any dangerous condition due to a lack of barricades. Apart from this, the inspector testified he had no right to tell and did not tell the contractor's employees "how to do things." After reaffirming the rule that the mere right to see that work is satisfactorily done does not impose a duty to see that the contractor complies with applicable safety regulations, the court held that, because of the evidence of some control over the activities of the contractor insofar as safety to others was concerned, it became a question of fact as to whether the city was a statutory employer within the Labor Code.

In *Stilson* v. *Moulton-Niguel Water Dist., supra,* 21 Cal.App.3d 928, the plaintiff was injured in a fall from a 30-foot steel column on which he was working. Plaintiff, an employee of the subcontractor, sued the water district as a general employer. The plaintiff's motion for a directed verdict against the district was granted based in part on an agency theory. The district had entered into a construction contract with the plaintiff's employer. The contract contained terms giving the district engineer virtually the identical powers of control over the subcontractor's work as respondent had over Young's work pursuant to the freeway construction contract. (21 Cal.App.3d at pp. 934-935.) The district argued on appeal that the contract granted the district engineer only a general supervisory power over the work performed by the subcontractor. The reviewing court concluded that while the contract terms could not be said to create an agency as a matter of law, a question of fact for the jury did exist.

In the present case, respondent's contract with Young provided that respondent's chief resident engineer would decide all questions as to the acceptability of the work performed and the acceptability of the manner of performance of the work. The engineer was authorized to give orders and directions to the contractor's foreman in the absence of the contractor. The engineer had the authority to order the contractor to remove or discontinue the use of "unsuitable" equipment; the engineer could order incompetent employees to be discharged, and the contract expressly provided that all state safety provisions were to be complied with. From the terms of the contract, a reasonable inference can be drawn that respondent, through its chief engineer, had the right to order unsafe equipment removed from the job. Assuming such a degree of

control, it is unimportant that the accident occurred in the borrow pit 500 yards off of respondent's premises. If the tractor had been ordered off the job until the driveshaft was covered plaintiff would not have been injured; thus, it reasonably may be inferred that respondent's failure to exercise its duty of care was a proximate cause of plaintiff's injury even though the accident occurred off the premises owned by respondent.

We find no public policy which would proscribe a public entity's duty to exercise reasonable care to prevent injury to those working about its contractor's equipment when the entity has actual knowledge of the unsafe condition of the equipment and has the power, i.e., the right, to order the equipment removed from the job. In this situation the social justification for imposing a duty on the employer-entity to see that the danger is eliminated far outweighs any reasons against imposition of liability.

■ We emphasize that a duty of care can be imposed on the public entity with respect to the safety of the equipment furnished by his contractor only upon proof of actual knowledge of the dangerous condition of the equipment. (Cf. Gov. Code, §§ 818.6, 821.4.) A finding of such knowledge cannot be based on speculation or conjecture; it can be inferred from the circumstances only if in light of the evidence the employer "must have known" and not "should have known" of the dangerous condition. On the other hand, a defendant's actual knowledge may be shown by circumstantial as well as direct evidence; hence, his denial of such knowledge will not, per se, prevent liability. (See *Uccello* v. *Laudenslayer,* 44 Cal.App.3d 504, 514, fn. 4 [118 Cal.Rptr. 741].)

■ We hold that appellant's proof presented a jury question as to whether respondent was a statutory employer under the Labor Code as well as whether respondent was negligent under the general tort law articulated in section 414 of the Restatement Second of Torts. It was error to grant the nonsuit as to the second cause of action.

### THIRD CAUSE OF ACTION

■ In his third cause of action appellant alleged that respondent negligently selected and retained Young as contractor in that Young's equipment in general and the Caterpillar 630 tractor in particular was in an unsafe condition and respondent knew or, in the exercise of reasonable care, should have known this to be true. Appellant chose not to amend his complaint; therefore, it must be assumed on appeal that

whatever facts he might have proved in support of the action were alleged in the complaint. (*Irwin* v. *City of Manhattan Beach* (1966) 65 Cal.2d 13, 24-25 [51 Cal.Rptr. 881, 415 P.2d 769]; *O'Hara* v. *L.A. County Flood etc. Dist.* (1941) 19 Cal.2d 61, 64 [119 P.2d 23].)

Government Code section 815 provides in pertinent part that, except as provided by statute, a public entity is not liable for an injury arising out of an act or omission of the entity or a public employee or any other person. Statutory authority for entity liability is found in section 815.2, subdivision (a), which provides that a public entity is liable for injury proximately caused by an act or omission of the employee of the entity within the scope of his employment if the act or omission would have given rise to a cause of action against that employee. Section 820, subdivision (a), provides that, except as otherwise provided by statute, a public employee is liable for injury caused by his act or omission to the same extent as a private person.

A cause of action lies in tort for the negligent selection of an independent contractor. (See Rest. 2d Torts, § 411; *Risley* v. *Lenwell* (1954) 129 Cal.App.2d 608, 622-625 [277 P.2d 897]; 4 Witkin, Summary of Cal. Law (8th ed.) Torts, § 658, p. 2938.) Moreover, an agent or employee is always liable for his own torts irrespective of whether the principal is liable and regardless of whether the agent acts according to his principal's directions. (Civ. Code, § 2343, subd. 3; see 1 Witkin, Summary of Cal. Law (8th ed.) Agency and Employer, § 186, pp. 781-782.) Therefore, the negligent selection or retention of the general contractor in this case would give a cause of action against the public employee involved, thereby bringing the cause of action within the scope of section 815.2, subdivision (a).

However, section 815.2, subdivision (b) provides that, except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of its employee where the employee is immune from liability.

Government Code section 820.2 provides in pertinent part: ". . . a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

*Johnson* v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], holds that immune discretionary acts by public employees as contrasted with unprotected ministerial acts are those which are at the "planning" level of decision-making or can be described as basic policy decisions. Negligence occurring at the "operational-level" of decision-making is not immune. (69 Cal.2d, pp. 793-794.) It would appear, therefore, that the decision of a state employee to hire a contractor known to be negligent or incompetent would be a ministerial, and not a policy-making decision.[3]

However, we need not decide this question at this time. *Johnson* v. *State of California, supra,* also holds that to avail itself of the discretionary immunity provided by section 820.2 the public entity must prove that the employee, in deciding to perform the act that led to plaintiff's injury, consciously exercised discretion in the sense of assuming certain risks in order to gain other policy objectives. "[T]o be entitled to immunity the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place. The fact that an employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision." (69 Cal.2d at pp. 794-795, fn. 8.) This language is cited in *Elton* v. *County of Orange* (1970) 3 Cal.App.3d 1053 at page 1058 [84 Cal.Rptr. 27] as authority for the proposition that a public entity's showing of discretionary immunity under section 820.2 cannot be ruled on at the demurrer stage.

It was error to sustain the general demurrer to the third cause of action.

The judgment of nonsuit on the first cause of action is affirmed; the judgment of nonsuit on the second cause of action is reversed; and the

---

[3]Appellant's cause of action for negligent selection and retention of Young should be limited to respondent's actual knowledge of the dangerous condition of Young's equipment. To hold otherwise would abrogate section 818.6 of the Government Code by allowing the failure to inspect property for safety hazards to be actionable under the guise that the state "should have known" that the equipment was unsafe and, therefore, negligently hired the contractor. As appellant has pleaded that respondent knew that Young's equipment was in an unsafe condition, the cause of action does not contravene section 818.6.

judgment of dismissal of the third cause of action for failure to state a cause of action is reversed.

Appellant is awarded his costs on appeal.

Gargano, Acting P. J., and Thompson, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 21, 1976.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.