**Isabel YANEZ, Plaintiff–Appellant,**

**v.**

**UNITED STATES of America, Defendant–Appellee**

No. 93–16943.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 15, 1995.

Decided Aug. 21, 1995.

As Amended on Denial of Rehearing Oct. 23, 1995.*

---

* Judges Fletcher and Reinhardt have voted to deny the petition for rehearing. Judge Noonan    has voted to grant it.

Joseph J. Appel, San Francisco, CA, for plaintiff-appellant.

William F. Murphy, Asst. U.S. Atty., San Jose, CA, for defendant-appellee.

Before: FLETCHER, REINHARDT, and John T. NOONAN, Jr. Circuit Judges.

Opinion by Judge FLETCHER; Partial Concurrence and Partial Dissent by Judge NOONAN.

FLETCHER, Circuit Judge:

Plaintiff Isabel Yanez appeals the district court's partial judgment on the pleadings and partial summary judgment in favor of the United States in her action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2674. Yanez seeks damages for injuries she sustained while performing work for an independent contractor, Caelus Devices, Inc. ("CDI"), at its munitions factory. She claims that the United States is liable under the peculiar risk doctrine and because it exercised negligent control over CDI's activities. We affirm in part and reverse in part.

## FACTS & PRIOR PROCEEDINGS

This case arises out of Isabel Yanez's employment with CDI, a munitions contractor for the United States. On June 11, 1986, Yanez lost her left arm and suffered third degree burns when dextrinated lead azide exploded at CDI. Broco, Inc., supplied the lead azide to CDI.

Yanez sued Broco in state court claiming that its defective lead azide was the cause of her injuries. CDI then sued Broco. The cases were consolidated. The Yanez–Broco suit settled for $375,000, and the CDI–Broco suit settled for $90,000. Yanez received approximately $200,000 in workers' compensation benefits for her injuries.

After exhausting her administrative remedies, Yanez filed suit in federal court against the United States under the FTCA, alleging that the government's negligent inspections and lax enforcement of safety regulations caused her injuries. The United States filed a third-party complaint against Broco for indemnity or contribution. Broco moved for dismissal of the third-party complaint based

on its good faith settlement with Yanez. The district court denied this motion. The United States moved for judgment on the pleadings. The district court denied this motion, ruling that the peculiar risk doctrine applied to Yanez's claim. The United States then moved to dismiss based on the doctrine of judicial estoppel, arguing that because Yanez represented in state court that Broco had caused her injuries, she was estopped from claiming in federal court that the United States had caused her injuries. The district court granted the motion. This court reversed and remanded, finding that Broco and the United States could be concurrent causes of Yanez's injuries. *Yanez v. United States,* 989 F.2d 323, 326–27 (9th Cir.1993).

On remand, the United States renewed its motion for judgment on the pleadings based on the California Supreme Court's recent decision in *Privette v. Superior Court,* 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721 (Cal.1993), and its lack of control over CDI. The district court granted this motion, construing the control claim as a motion for partial summary judgment and the peculiar risk claim as a motion for judgment on the pleadings. On remand, Broco moved for reconsideration of its motion to dismiss based on the good faith settlement in state court. The district court found that this motion was moot because it held that the United States was not liable, making the government's claim for indemnity against Broco unnecessary. Yanez timely appealed.

## JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. § 1346. This court has jurisdiction over the district court's final judgment under 28 U.S.C. § 1291.

## DISCUSSION

I. *Peculiar Risk Liability*

Yanez argues that the United States is directly liable under the peculiar risk doctrine for its failure to take special precautions where the contractor has failed to do so. We disagree.

1. Under the FTCA, the United States may not be

A. *Standard of Review*

■ The district court entered a judgment on the pleadings for the peculiar risk claim. A judgment on the pleadings is reviewed de novo. *Westlands Water Dist. v. Firebaugh Canal,* 10 F.3d 667, 670 (9th Cir. 1993). The district court may grant a motion for judgment on the pleadings "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir.1989).

B. *Federal Tort Claims Act*

The FTCA waives the sovereign immunity of the United States for claims based on the negligent or wrongful acts of United States employees. 28 U.S.C. § 1346. The FTCA provides that the government cannot be held vicariously liable for the negligence of an employee of an independent contractor. 28 U.S.C. § 2671; *Logue v. United States,* 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973). Under the FTCA, the government's liability is determined "in the same manner and to the same extent as a private individual in like circumstances." 28 U.S.C. § 2674; *Kangley v. United States,* 788 F.2d 533 (9th Cir.1986). Because plaintiff's accident occurred in California, this action is governed by California law. 28 U.S.C. § 1346(b).

C. *California Law*

■ In California, the general rule, subject to numerous exceptions, is that a principal is not liable for torts committed by an independent contractor. *See Van Arsdale v. Hollinger,* 68 Cal.2d 245, 66 Cal.Rptr. 20, 437 P.2d 508, 511 (Cal.1968). The peculiar risk doctrine, which is described in the Restatement (Second) of Torts sections 416 and 413, is an exception to this rule that applies when the work poses an inherent risk of injury.

■ Before the recent decision in *Privette v. Superior Court,* 5 Cal.4th 689, 21 Cal. Rptr.2d 72, 854 P.2d 721 (1993), California courts held that a principal was vicariously [1]

held vicariously liable. 28 U.S.C. § 2671. How-

liable for the failure of its contractor to take special precautions against peculiar risks—even if such precautions had been required by contract. *See, e.g., Woolen v. Aerojet Gen. Corp.*, 57 Cal.2d 407, 20 Cal.Rptr. 12, 369 P.2d 708 (1962); *Holman v. State*, 124 Cal.Rptr. 773, 124 Cal.Rptr. 773, 781–84 (1975); Restatement (Second) of Torts § 416. In *Privette*, the California Supreme Court reversed itself by holding:

> When, as here, the injuries resulting from an independent contractor's performance of inherently dangerous work are to an employee of the contractor, and thus subject to workers' compensation coverage, the doctrine of peculiar risk affords no basis for the employee to seek recovery of tort damages from the person who hired the contractor but did not cause the injuries.

21 Cal.Rptr.2d at 81, 854 P.2d at 730. After *Privette*, California permits a principal to delegate its duty to provide a reasonably safe work place to its contractor's employees, even where "peculiar risks" are involved, and to rely on the state workers' compensation system to make the worker whole. *Id.*

Yanez argues that *Privette* does not apply to her case because she seeks to hold the United States directly, not vicariously, liable for its negligence. We conclude that the district court properly rejected this claim.

Yanez first argues, citing pre-*Privette* section 416 cases, that a principal can be held liable for its failure (as opposed to the contractor's failure) to supervise under section 416. *See Aceves v. Regal Pale Brewing Co.*, 24 Cal.3d 502, 156 Cal.Rptr. 41, 595 P.2d 619 (1979); *Widman Rossmoor Sanitation, Inc.*, 97 Cal.Rptr. 52 (1971); *Gardner v. United States*, 780 F.2d 835 (9th Cir.1986); *McGarry v. United States*, 549 F.2d 587 (9th Cir.1976), *cert. denied*, 434 U.S. 922, 98 S.Ct. 398, 54 L.Ed.2d 279 (1977); *Thorne v. United States*, 479 F.2d 804 (9th Cir.1973). However, this argument is unavailing because after *Privette* a principal may delegate its duty to supervise the safety precautions of its contractor.

■ Second, Yanez argues that the United States may be held liable under section 413 of the Restatement (Second) of Torts for its failure to take appropriate precautions where CDI failed to do so. *Owens v. Giannetta–Heinrich Constr. Co.*, 23 Cal.App.4th 1662, 29 Cal.Rptr.2d 11, 14 *rev. denied*, 1994 Cal. LEXIS 3286 (Cal.1994), provides some support for her claim. In *Owens*, a California Court of Appeals suggested that even after *Privette* direct liability still exists under section 413, which requires a principal to provide contractual protections against peculiar risks. *Id.* ; *see also Littlefield v. United States*, 927 F.2d 1099, 1103 (9th Cir.) (duty under section 413 is limited to requiring a contractor to take appropriate safety measures in its contract), *cert. denied*, 502 U.S. 907, 112 S.Ct. 299, 116 L.Ed.2d 242 (1991); *Nelson v. United States*, 639 F.2d 469, 477 (9th Cir.1980) ("The essence of the duty ... imposed by Section 413 [is] to provide contractually for the contractor's observance of detailed and specific safety precautions."). However, Yanez's claim misses the mark because she fails to allege that the defendant's *contract* did not adequately protect her against the peculiar risks inherent in munitions production.[2] Instead of relying on this narrow exception to *Privette*, Yanez argues that under section 413 the United States is liable for its *negligent failure to supervise* the precautions taken by its contractor and to take those precautions itself if necessary. This is exactly the sort of liability rejected by *Privette*. Because we conclude that Yanez's "section 413" claim is indistinguishable from the theory of liability rejected in *Privette*, we affirm the district court's judgment on the pleadings on Yanez's peculiar risk claim.

---

ever, section 416 liability has been construed as creating direct liability for the government's nondelegable duty to ensure that the contractor employs proper safety procedures. *See McCall v. United States*, 914 F.2d 191, 194 (9th Cir.1990) (collecting cases).

2. Indeed, if Yanez had stated such a claim, the district court would have arrived at the same result. It would have construed her motion as one for partial summary judgment, examined the terms of the contract, and determined that the Government had properly delegated its duty to CDI. *See Hal Roach Studios*, 896 F.2d at 1550; Fed.R.Civ.P. 12(c).

## II. *Liability Arising from Retention of Control*

Yanez argues next that because the evidence supports a finding that the United States exercised control over CDI's activities, the district court erred by granting summary judgment to the defendant on her negligent control claim. We reverse the district court's finding that the United States was not liable under a "control" theory.

### A. *Standard of Review*

■ The district court treated the defendant's motion for judgment on the pleadings on the retained control claim as a motion for summary judgment. A district court's grant of summary judgment is reviewed de novo. *Jones v. Union Pac. R.R.*, 968 F.2d 937, 940 (9th Cir.1992). Pursuant to Federal Rule of Civil Procedure 56(c), the grant of summary judgment is reviewed to determine if, viewing the facts in the light most favorable to the nonmoving party, there are no issues of material fact and the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989).

### B. *Control Over Independent Contractors*

Yanez argues that under California law, she has raised sufficient disputes of material fact concerning the government's control over CDI to survive summary judgment. We agree.

In its first partial summary judgment on Yanez's claim that the government had breached its non-delegable duty to provide a safe workplace, a claim that has since been undermined by *Privette*, the district court found that the following evidence created disputes of material fact as to whether the government had breached its duty of care:

[P]laintiff has presented evidence that the government inspectors were negligent in ensuring that the CDI operations met the contractually required safety standards by failing to follow up on findings of improper fire symbols, non-conductive floors, improper placement of machinery with explosives, and improper storage of hazardous materials. *Plaintiff has also presented evidence that government inspectors knew of the widespread non-use of the required conductive shoes but failed to act on this information.*

*Order Denying Defendant's Motion for Judgment on the Pleadings,* Dec. 5, 1989, at 4 (emphasis added).

The evidence of the government's knowledge of the safety violations at CDI raise the question of whether such knowledge on the government's part was sufficient to create a duty to Yanez to order correction or, itself, take corrective action.

Section 414 of the Restatement (Second) of Torts has been adopted by California courts. *See, e.g., Austin v. Riverside Portland Cement Co.*, 44 Cal.2d 225, 282 P.2d 69, 73 (1955); *Holman v. State*, 53 Cal.App.3d 317, 124 Cal.Rptr. 773, 781–84 (1975). It provides: [3]

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for the physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.... The employer may, however, retain a control less than that which is necessary to subject him to liability as master. He may retain only the power to direct the order in which the work shall be done or to forbid its being done in a manner likely to be dangerous to himself or others. Such a supervisorial control may

**3.** The government contends that section 414 is irrelevant to Yanez's claim because federal law controls the initial determination of whether a person or entity is a federal employee. We agree that federal law controls the determination of the status of an individual as a federal employee. *See* 28 U.S.C. § 1346(b); *Brandes v. United States*, 783 F.2d 895, 896 (9th Cir.1986). The dispute here is not, however, whether the alleged tortfeasors are employees of the government. Rather, the question is whether the government's employees are themselves liable for torts alleged to have been committed against the plaintiff. In this regard, the United States government as a contractor or an employer is "liable ... in the same manner and to the same extent as a private individual under like circumstances." *See* 28 U.S.C. § 2674. For this purpose, we apply state law. 28 U.S.C. § 1346(b).

not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others.

Restatement (Second) of Torts § 414 and comment a.

■ We agree with the government that under California law "the mere right to see that work is satisfactorily completed [does not] impose[ ] upon the one hiring an independent contractor the duty to assure that the contractor's work is performed in conformity with all safety provisions." *Kuntz v. Del E. Webb Constr. Co.*, 57 Cal.2d 100, 18 Cal.Rptr. 527, 368 P.2d 127, 129 (1961). Indeed, California courts have found that a principal may retain a broad general power of control to inspect, to make recommendations, and to prescribe alterations and modifications without altering the relationship of principal and contractor. *See, e.g., McDonald v. Shell Oil, Co.*, 44 Cal.2d 785, 285 P.2d 902, 904 (Cal.1955); *Letnes v. United States*, 820 F.2d 1517, 1519 (9th Cir.1987); *Kirk v. United States*, 270 F.2d 110, 116–17 (9th Cir.1969) (retention of right to inspect and to stop work does not create a duty to contractor's employees). However, here the plaintiff's evidence may prove something more—the government's knowledge of a dangerous condition and failure to take appropriate action to correct it. It is here that the government's argument fails.

■ In *Holman v. State*, a California Court of Appeal held that section 414 liability applies where a principal has actual knowledge of a dangerous condition and the authority to correct the dangerous condition.[4] 124 Cal.Rptr. at 781–84; *see also Kuntz*, 18 Cal.Rptr. at 530–31, 368 P.2d at 130 (applying same rule to general contractor). Here, evidence adduced by Yanez indicates that government inspectors may have had actual knowledge of safety violations and the dangers posed by the violations, yet failed to

exercise their right to order the contractor to correct them, and, if it did not, to order the work halted. In California, these facts, if true, are sufficient to establish liability under section 414. *See Holman*, 124 Cal.Rptr. at 781–84. Consequently, Yanez is entitled to present her evidence to the jury. On this basis, we reverse the district court's partial summary judgment for the defendant on the plaintiff's control claim. *Accord McMichael v. United States*, 856 F.2d 1026, 1035 (8th Cir.1988).

## CONCLUSION

We affirm the district court's partial judgment on the pleadings dismissing the plaintiff's peculiar risk claim but reverse the partial summary judgment for the defendant on the plaintiff's control claim. We remand for further proceedings in accordance with our decision.

AFFIRMED IN PART; REVERSED IN PART; REMANDED.

NOONAN, Circuit Judge, concurring and dissenting:

I concur in the opinion of the court holding that *Privette v. Superior Court*, 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721 (1993), decided while this case was still before the district court, doomed the plaintiff's cause. I disagree, however, that some portion of that cause still has a half-life after *Privette*. In reaching my conclusion, I believe that I do what a federal court should do in applying relevant state law: that is, follow the reasoning of the state's highest court even as to a particular theory of liability not expressly dealt with by that court and certainly as to a theory of liability expressly rejected by the state's highest court and erroneously revived by the aberrant decision of a lower state court.

*Section 414 Liability*

*Privette* dealt with peculiar risk, not liability for retained control. Its reasoning is not limited to peculiar risk. After *Privette*, an independent contractor's employee cannot obtain workers' compensation and then ob-

---

4. The government attempts to distinguish *Holman*, arguing that it applies only to landowners. We find this contention unpersuasive because the opinion's reasoning does not depend on such a distinction.

tain a second recovery from the person who contracted with his employer to have that employer perform the job: "when the contractor's failure to provide safe working conditions results in injury to the contractor's employee, additional recovery from the person who hired the contractor—a nonnegligent party—advance no societal interest that is not already served by the workers' compensation system." *Privette*, 21 Cal.Rptr.2d 72, 73, 854 P.2d 721, 723. This conclusion is peremptory. As far as California law is concerned, it is authoritative as to the societal interests to be served in tort. *Privette* states explicitly that workers' compensation ensures both "that injuries ... will be compensated" *and* "that adequate safeguards are taken to prevent such injuries." *Id.*

It might be objected that this language applies only to a person that the Supreme Court of California characterizes as "nonnegligent," while section 414 liability applies to a negligent person who has hired a contractor. But *Privette* goes further. Because of the exclusivity of workers' compensation, allowing the employee to recover against the person who has hired the contractor produces the "anomalous result" that the liability of that person is greater than that of the employer whose negligence also caused the employee's injury. *Id.* at 78, 854 P.2d at 727–28. *Privette* approved of the reasoning of other courts that the exclusivity of workers' compensation should protect the party to the contract who pays indirectly for the cost of the coverage through the contract price. *Id.* at 78, 854 P.2d at 727–28. The court found persuasive the reasoning contained in a special note to chapter 15 of the tentative draft of the Restatement. *Id.* at 79, 854 P.2d at 728–29. That note applied explicitly to section 414 liability as well as to section 413 and section 416 liability: "when the Sections in this Chapter speak of liability to 'another' or 'others', or to 'third persons', it is to be understood that the employees of the contractor, as well of those of the defendant himself, are not included." Rest.2d Torts, Tent.Draft No. 7, Apr. 16, 1962, ch. 15, special note, pp. 17–18. *Privette* further noted that allowing a second recovery after workers' compensation benefits were paid would give employees of independent contractors

"an unwarranted windfall," while the exclusivity of workers' compensation would work an injustice against the party to the contract by preventing him from obtaining indemnity from the independent contractor responsible for the injury.

This set of reasons applies equally to "retained control" liability, unless the control is such that the person contracting for the work is actually acting as the employer, in which case his workers' compensation insurer would cover the injuries and he would benefit from the exclusivity of workers' compensation. If the control of the party to the contract is not sufficient to make him an employer, then under *Privette* the exclusive remedy for an employee's injury is through the insurer of his employer, in this case the insurer of the independent contractor.

Applying California law, we are bound not to produce a result that the California Supreme Court has stigmatized as anomalous, that the California Supreme Court has declared gives an unjustified benefit to the plaintiff employee, that the California Supreme Court has found to be unjust to the party to the contract with the independent contractor. The court here, however, does all these things by continuing to treat the California section 414 cases as possessing vitality. That to my mind is not a fair and faithful application of the current law of the state whose rules we are applying.

Even if section 414 liability survived *Privette*, the court would be misapplying established California law: According to section 414, Comment b, the rule "is usually though not exclusively, applicable when a principal contractor entrusts a part of the work to subcontractors, but himself or through a foreman superintends the entire job." Clearly this usual application is not possible here. The question then is if in California an unusual application is warranted here. According to California cases, it is not: "an owner's demand that the independent contractor comply with safety regulations does not make the owner a guarantor that the regulations are, in fact, respected." *Smith v. ACandS, Inc.,* 31 Cal.App.4th 77, 91, 37 Cal. Rptr.2d 457 (1994); *see also McDonald v. Shell Oil Co.,* 44 Cal.2d 785, 285 P.2d 902, 904

(1955) ("owner may retain broad general power of supervision and control ... without changing the relationship from that of owner and independent contractor").

Language here reflects law. No legal term has been coined to describe the party to the contract who the employee of the other party to the contract seeks to hold liable in addition to his own employer. Of course, if "the party to the contract" was a principal and the other party his agent, he could be liable. Or if the party to the contract was a landowner he might be liable in some way for the conditions on the property. But the person who is merely a party to an agreement requiring an independent contractor to perform work on that independent contractor's premises has no special name. And he has no special name because common sense, like California law, does not put him in a category of common liability.

*Section 413 Liability*

*Owens* was incorrect in its dicta that the *Privette* court "intended its holding to apply only in those situations where third-party liability is vicarious rather than direct." *Owens v. Giannetta-Heinrich Const. Co.*, 23 Cal.App.4th 1662, 29 Cal.Rptr.2d 11, 14 (1994). Not only does the language in *Privette* suggest the contrary, but *Privette* explicitly overrules several so-called "direct" liability cases. The court in our case is incorrect in its dicta to treat *Owens* as reviving section 413 liability.

The *Privette* court cites five cases for California's expansion of peculiar risk liability to cover employees, *Woolen* and its progeny, *Ferrel, Van Arsdale, Griesel,* and *Aceves.* Of these five, four were so-called "direct" section 413 cases in which the contracts failed to provide for precautions. *Woolen v. Aerojet,* 57 Cal.2d 407, 410, 20 Cal.Rptr. 12, 369 P.2d 708 (1962); *Ferrel v. Safway Steel Scaffolds,* 57 Cal.2d 651, 656, 21 Cal.Rptr. 575, 371 P.2d 311 (1962); *Griesel v. Dart Indus., Inc.,* 23 Cal.3d 578, 582, 153 Cal.Rptr. 213, 591 P.2d 503 (1979); *Aceves v. Regal Pale Brewing Co.,* 24 Cal.3d 502, 510, 156 Cal.Rptr. 41, 595 P.2d 619 (1979). To the extent that these cases extended peculiar risk liability to employees, *Privette* explicitly overruled them without distinguishing between section 416

and section 413 liability. *Privette,* 21 Cal. Rptr.2d at 80 n. 4, 854 P.2d at 730 n. 4. How *Owens* could conclude that section 413 liability survives *Privette* is beyond imagination. We have no obligation to accept this maverick misreading of the Supreme Court of California.