**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| GREGORY EDISON, *Plaintiff-Appellant*, | No. 14-15472 |
| v. | D.C. No. 1:12-cv-02026-AWI-JLT |
| UNITED STATES OF AMERICA; THE GEO GROUP, INC.; MANAGEMENT AND TRAINING CORPORATION, *Defendants-Appellees.* | |
| RICHARD NUWINTORE, *Plaintiff-Appellant*, | No. 14-17546 |
| v. | D.C. No. 1:13-cv-00967-AWI-JLT |
| UNITED STATES OF AMERICA, *Defendant-Appellee*, | |
| and | OPINION |
| MANAGEMENT & TRAINING CORPORATION, *Defendant.* | |

Appeals from the United States District Court
for the Eastern District of California
Anthony W. Ishii, Senior District Judge, Presiding

Argued and Submitted February 8, 2016
San Francisco, California

Filed May 20, 2016

Before: A. Wallace Tashima and William A. Fletcher,
Circuit Judges, and Robert W. Gettleman,* Senior District
Judge.

Opinion by Judge Tashima

---

## SUMMARY**

### Federal Tort Claims Act

The panel reversed the district court's dismissal of
plaintiffs' Federal Tort Claims Act ("FTCA") action, and
held that the independent contractor exception to the FTCA
did not bar plaintiffs' claims alleging a breach of the
government's duties to prisoners housed at Taft Correctional
Institution in California's San Joaquin Valley.

---

* The Honorable Robert W. Gettleman, Senior United States District
Judge for the Northern District of Illinois, sitting by designation.

** This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

Plaintiffs are two prisoners housed at Taft who contracted coccidiodomycosis ("cocci"), colloquially known as "Valley Fever," while incarcerated at Taft. Although the federal Bureau of Prisons ("Bureau") owns Taft, independent contractors operate the prison.

The panel held that plaintiffs met their burden to show that the independent contractor exception did not bar the district court's subject matter jurisdiction under the FTCA. Specifically, the panel held that the federal government owed a duty of care to plaintiffs under California law, which generally assumes that landowners have a duty to exercise reasonable care in the ownership and management of the property. The panel further held that the government's duty was underscored by the special relationship that California recognizes between jailer and prisoner.

Concerning plaintiffs' specific claims, first, the panel held that the Bureau's duty to warn prisoners before transferring them to Taft arose out of the scope of its contractor relationship with the prison operators, and therefore was not barred by the independent contractor exception. The panel held that because cocci posed a hidden danger that plaintiffs could not reasonably ascertain on their own, the United States had a duty to warn plaintiffs of cocci's risks prior to their transfer to Taft. The panel further held that the United States could not have designated this duty to the prison operators.

Second, the panel held that to the extent that plaintiffs alleged that the Bureau was negligent in failing to construct covered walkways or other protective structures, the independent contractor exception to the FTCA did not bar the district court from considering their claim where the Bureau retained the duty to construct such structures.

Third, the panel held that the independent contractor exception to the FTCA did not bar the district court from exercising jurisdiction over plaintiffs' claim that the Bureau had a duty to develop an adequate cocci prevention policy where the Bureau expressed its intent to retain control over the specific duty to develop a policy for the prevention and treatment of cocci.

## COUNSEL

Ian M. Wallach (argued) and Jason K. Feldman (argued), Feldman & Wallach, Venice, California; Mark A. Ozello and Suzy E. Lee, Arias Ozzello & Gignac, LLP, Los Angeles, California; Raymond P. Boucher and Hermez Moreno, Khorrami Boucher Sumner Sanguinetti, LLP, Los Angeles, California, for Plaintiffs-Appellants.

Alyson A. Berg (argued), Assistant United States Attorney, and Benjamin B. Wagner, United States Attorney, United States Attorney's Office, Fresno, California, for Defendant-Appellee.

No appearance for Defendants-Appellees The GEO Group, Inc. and Management & Training Corp.

**OPINION**

TASHIMA, Circuit Judge:

Plaintiffs are two prisoners housed at Taft Correctional Institution ("Taft"), the only federally-owned and contractor-operated prison in the country. In 2003, Taft was struck by an outbreak of coccidioidomycosis ("cocci"), colloquially referred to as "Valley Fever." In most individuals, cocci manifests primarily as a minor fever. In an unlucky few, however, the disease takes a different, more devastating course – it causes a number of painful conditions, and can be fatal. Plaintiffs, along with an unprecedented number of other prisoners, contracted cocci while incarcerated at Taft. Both developed the more dangerous form.

Plaintiffs assert, under the Federal Tort Claims Act ("FTCA"), that the United States breached its duty to protect them from harm. The FTCA holds the government liable for its torts to the same extent as a private individual in similar circumstances. But the government's liability under the FTCA is limited. The government cannot be held liable for torts committed by its independent contractors; accordingly, the district court lacks jurisdiction to entertain such claims. Nevertheless, the independent contractor exception is not a complete bar to liability any time the United States employs an independent contractor. Some duties of care are nondelegable; others are retained by the government, if not delegated. Here, the federal government retained some of its duties to Taft prisoners. The independent contractor exception to the FTCA does not bar Plaintiffs' claims alleging a breach of those duties the United States retained.

The district court granted the government's motions to dismiss for lack of subject-matter jurisdiction, Fed. R. Civ. P. 12(b)(1), under the independent contractor exception to the FTCA, 28 U.S.C. § 2671. Plaintiffs timely appeal. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

## I.

Taft is located in California's southern San Joaquin Valley. Although the Federal Bureau of Prisons ("BOP") owns Taft, independent contractors operate the prison. This arrangement is unique within the BOP.

In 1997, Wackenhut Corrections Corporation, now known as The GEO Group, Inc. ("GEO"), was awarded a ten-year contract to operate Taft. In 2007, the BOP awarded a similar contract to Management & Training Corporation ("MTC"). MTC continues to operate Taft pursuant to its contract with the BOP. Both contracts assigned to the contractor the day-to-day operations of the prison, including the maintenance of buildings and the provision of medical care. A BOP employee who worked at Taft confirmed that "[n]o BOP employee was responsible for inmate safety and security, building and grounds maintenance, sanitation, health services, inmate orientation, inmate education, inmate recreation, inmate employment, inmate discipline, or any other aspect" of Taft's day-to-day operations. Yet, both contracts also reserved to the government the right to construct new buildings, expand existing buildings, and modify or add to the mechanical or utility systems of existing buildings.

## A.  Outbreak at Taft

In 2003, an epidemic of coccidioidomycosis struck Taft. Cocci is an infectious disease caused by inhalation of *Coccidioides immitis*, a fungus that lives in the San Joaquin Valley soil.  According to the Center for Disease Control and Prevention ("CDC"), "[s]ymptomatic coccidioidomycosis, which occurs in approximately 40% of all infections, has a wide clinical spectrum, including mild influenza-like illness, severe pneumonia, and disseminated disease."[1]  The disseminated form of the disease – that is, when the fungus spreads from the lungs to the body's other organs – is the most serious.  Disseminated cocci may cause miliary tuberculosis, bone and joint infections (including osteomyelitis), skin disease, soft tissue abscesses, and meningitis.  In some cases, surgery may be the only available treatment.  The antifungal Fluconazole is effective against most cocci infections, but it is a daily treatment that must be continued for the rest of the patient's life.  Individuals of certain races, especially African-Americans and Filipinos, are at significantly higher risk of contracting disseminated cocci than the rest of the population.  If left untreated and allowed to progress to meningitis, the disseminated form of the disease is uniformly fatal.

Taft is located in a region with one of the highest concentrations of the cocci fungus.  In 2003, the number of prisoners infected at Taft reached epidemic numbers. Infections reportedly more than doubled between 2003 and 2005.  The warden of Taft admitted there were "more cases

---

[1] *See Morbidity and Mortality Weekly Report: Coccidioidomycosis – California, 1991–1993*, Ctr. for Disease Control & Prevention (Jun. 17, 1994), http://www.cdc.gov/mmwr/preview/mmwrhtml/00031453.htm.

of diagnosed Valley Fever [at Taft] than in all other federal prisons combined." Several prisoners subsequently developed the disseminated form of the disease, and at least one died.

## B.  The Official Response

In response to the outbreak, the BOP contacted the CDC. Together, the agencies were to develop a plan addressing the epidemic at Taft. Plaintiffs presented evidence that, although the original plan included protocols for prevention, in addition to diagnosis and treatment, the BOP subsequently reversed course, abandoning its prevention efforts to focus exclusively on early diagnosis and treatment. Except for a small population of uninfected but immunocompromised prisoners, the final policy provided for only those individuals already infected with cocci. While formulating this policy, BOP officials sent an internal email requiring that all CDC and BOP employees coordinate policy efforts through the office of the BOP's medical team. The BOP specifically excluded its contractors from participating in policy development, mandating that "all CDC and BOP employees cease discussions with other parties (including any third-party contractors . . . )." For prisoners who develop any form of cocci, including disseminated cocci, while incarcerated, The BOP provides no post-release medical care.

The BOP's contractors also took action. Around 2003 or 2004, GEO increased the frequency of various maintenance programs. GEO assigned prisoners to dust more regularly, wipe down the walls in the dormitories, and vacuum the overhead sprinklers where dust could accumulate. In addition, air filters in the ventilation system were replaced more frequently. GEO closed the recreation yard on windy

days, because on those days the fungus becomes airborne, increasing the risk of infection.

According to its contract with the BOP, GEO was also responsible for providing healthcare to infected prisoners. Accordingly, GEO distributed information sheets about cocci to prisoners at the Health Services Unit. Starting in 2004, GEO also posted flyers describing cocci and its symptoms on bulletin boards outside the bathrooms in prisoner housing units. The flyers advised prisoners to report to the Health Services Unit if they began to experience symptoms. After taking over Taft's operations in 2007, MTC created a written protocol for the intake, screening, and treatment of prisoners admitted to the health facility with symptoms of cocci. The protocol, however, did not address prevention.

## C. The *Edison* and *Nuwintore* Litigation

On September 21, 2005, Plaintiff-Appellant Gregory Edison, an African-American man, was sentenced to serve 198 months in federal prison. The BOP assigned Edison to Taft. He was diagnosed with cocci on October 30, 2010. Edison alleges that he was in good health prior to his assignment to Taft and had not previously been exposed to the disease.

On July 5, 2011, Plaintiff-Appellant Richard Nuwintore, also an African-American man, was sentenced to serve 14 months in federal prison. The BOP assigned Nuwintore to Taft. Nuwintore was diagnosed with disseminated cocci in September 2011. Like Edison, Nuwintore alleges that he was in good health prior to his assignment to Taft and was not previously exposed to the disease.

In 2012, Edison filed suit against the United States and its independent contractors, GEO and MTC, in the Eastern District of California. He sought damages for personal injury as a result of contracting cocci while incarcerated at Taft. Edison alleged three claims against the United States under the FTCA. He alleged that the BOP had failed: (1) to warn Edison adequately of the dangers presented by cocci; (2) to provide Edison with a safe and habitable prison when it neglected to implement various preventative measures; and (3) to develop and implement an adequate response to the cocci epidemic.[2] The United States filed a motion to dismiss for lack of subject matter jurisdiction, arguing that the FTCA's independent contractor exception barred Edison's suit. The district court granted the motion. *Edison*, 2013 WL 4828579, at \*6.

---

[2] The third claim in Edison's complaint alleges that the BOP "failed to provide suitable quarters and provide for the protection, safekeeping, care, and subsistence" of Edison as required by 18 U.S.C. § 4042(a). But in his opposition to the United States' motion to dismiss, Edison apparently glossed this claim to encompass the BOP's failure, in concert with the CDC, to develop a prevention program to protect prisoners who had not yet contracted cocci. On appeal, Edison characterizes the grounds for liability as: (1) failure to warn; (2) failure to modify structures; and (3) failure to develop and implement an adequate response to the cocci epidemic. The district court did not address this discrepancy, *see Edison v. United States*, No. 1:12-CV-02026-AWI, 2013 WL 4828579, at \*1, \*5 (E.D. Cal. Sept. 9, 2013), and the United States does not contest Edison's re-characterization of his third claim on appeal. Therefore, we treat the third claim as alleging a negligent failure to develop and implement an adequate response to the cocci epidemic. On remand, the district court should grant Edison leave to amend his complaint accordingly. *See Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011) (noting leave to amend "should [be] freely give[n] when justice so requires . . . to facilitate decision on the merits, rather than on the pleadings or technicalities" (alterations in original) (internal quotation marks and citations omitted)).

Nuwintore filed suit against the United States and MTC, also in the Eastern District of California, alleging the same three claims as Edison.  Once again, the United States moved to dismiss for lack of subject matter jurisdiction under the FTCA.  The magistrate judge, to whom the matter was referred, agreed with the district court's conclusion in *Edison* that the independent contractor exception barred jurisdiction. *Nuwintore v. United States*, No. 1:13-CV-00967-AWI, 2014 WL 1091358, at \*9 (E.D. Cal. Mar. 18, 2014).  The district court adopted the magistrate judge's findings and recommendation in full and granted the United States' motion to dismiss.  *Nuwintore v. United States*, No. 1:13-CV-00967-AWI, 2014 WL 2174681, at \*2 (E.D. Cal. May 23, 2014).

After their claims against the government were dismissed, both Edison and Nuwintore moved for the entry of final judgment pursuant to Federal Rule of Civil Procedure 54(b).[3] The district court granted the motions.  *Edison v. United States*, No. 1:12-cv-02026-AWI, 2014 WL 896977, at \*6 (E.D. Cal. Mar. 6, 2014); *Nuwintore v. United States*, No. 1:13-CV-0967-AWI, 2014 WL 7335215, at \*3 (E.D. Cal. Dec. 19, 2014).  Upon entry of the Rule 54(b) final judgments, Plaintiffs appealed.

## II.

It is undisputed that the BOP's independent contractors are responsible for the day-to-day operations of Taft.  But our precedents do not hold that the United States is absolved of all liability, no matter what the injury complained of or its cause,  any time it hires an independent contractor.  This case

---

[3] Edison and Nuwintore continue to litigate their claims against the independent contractors, GEO and MTC, in the district court.

requires us to ascertain the boundaries of the United States' liability when it has delegated some, but not all, of its legal duties to an independent contractor.

## A.  Standard of Review

We review de novo a dismissal for lack of subject matter jurisdiction under the FTCA. *Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006). We review "[t]he district court's findings of fact relevant to its determination of subject matter jurisdiction . . . for clear error." *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) (quoting *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000)).

An attack on subject matter jurisdiction may be facial or factual. "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Here, the United States mounted a factual attack when it filed declarations and affidavits challenging Plaintiffs' allegations that the government owed them a legal duty. The government argued that it had delegated to private contractors all duties the BOP owed Taft prisoners.

In response to a factual attack, Plaintiffs must present "affidavits or any other evidence necessary to satisfy [their] burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009) (citation omitted). The district court may look beyond the pleadings

to the parties' evidence without converting the motion to dismiss into one for summary judgment. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In evaluating the evidence, the court "need not presume the truthfulness of the plaintiffs' allegations." *Id.* Any factual disputes, however, must be resolved in favor of Plaintiffs. *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996).

## B. The FTCA's Independent Contractor Exception

The United States is immune from suit unless it consents to be sued. *See Dalehite v. United States*, 346 U.S. 15, 30 (1953) (citing *Feres v. United States*, 340 U.S. 135, 139 (1950)). The FTCA is a limited waiver of that sovereign immunity, under which "the United States is liable to the same extent as a private party for certain torts of federal employees . . . 'in accordance with the law of the place where the act or omission occurred.'" *Autery*, 424 F.3d at 956 (quoting 28 U.S.C. § 1346(b)(1)). The FTCA's limited waiver of sovereign immunity explicitly excludes "any contractor with the United States" from its definition of "[e]mployee of the government," 28 U.S.C. § 2671; this is known as the independent contractor exception to the FTCA. Courts have construed the independent contractor exception to protect the United States from vicarious liability for the negligent acts of its independent contractors. *Yanez v. United States*, 63 F.3d 870, 872 n.1 (9th Cir. 1995). "Since the United States can be sued only to the extent that it has waived its immunity, due regard must be given to the exceptions, including the independent contractor exception, to such waiver." *United States v. Orleans*, 425 U.S. 807, 814 (1976).

The independent contractor exception, however, has no bearing on the United States' FTCA liability for its *own* acts

or omissions. "Many cases recognize that it is not a defense, to liability for one's own negligence in connection with an actor whose conduct injured a third party, that the actor was not an agent or an employee," but rather an independent contractor. Restatement (Third) Of Agency § 7.05 (2006). Even where an employer has delegated some responsibilities to an independent contractor, the employer may still be held separately and directly liable for its own negligence.[4] *See Logue v. United States*, 412 U.S. 521, 532–33 (1973). Thus, a determination that the United States has declined to exercise control over the day-to-day operations of its contractor is not the end of the analysis. We must also determine whether Plaintiffs have alleged a separate nondelegable or undelegated duty, which the United States could be held directly liable for breaching. Only upon a finding that the government delegated its *entire* duty of care may the court dismiss the claim for lack of jurisdiction under the FTCA's independent contractor exception.

Here, the district court denied Plaintiffs' claims because the BOP delegated day-to-day care of Taft prisoners to GEO and MTC: "MTC was responsible for inmate orientation and

---

[4] The Ninth Circuit has previously applied this principle to hold the United States liable under the FTCA. An example is the line of FTCA cases applying the "peculiar risk" doctrine to hold the government directly liable for its failure to act, despite its delegation of safety procedures to an independent contractor. *See Myers v. United States*, 652 F.3d 1021, 1034 (9th Cir. 2011); *Yanez*, 63 F.3d at 872 n.1 ("Under the FTCA, the United States may not be held vicariously liable. However, [peculiar risk] liability has been construed as creating direct liability for the government's nondelegable duty to ensure that the contractor employs proper safety procedures." (citing *McCall v. United States*, 914 F.2d 191, 194 (9th Cir. 1990))); *McGarry v. United States*, 549 F.2d 587, 590 (9th Cir. 1976).

health, and warned inmates regarding the risks of [cocci]," while the BOP "was not responsible for maintenance, sanitation, health services, health education or inmate orientation." *Nuwintore*, 2014 WL 1091358, at *9. That is, the BOP did not attempt to supervise or control GEO/MTC in performing the day-to-day tasks of running a prison. *Id.* Based on the foregoing, the district court concluded that the independent contractor exception prevented it from exercising jurisdiction over Plaintiffs' claims under the FTCA.

There is no question in this case that GEO and MTC were independent contractors – Plaintiffs have conceded as much. Plaintiffs, however, do not seek to hold the United States vicariously liable for the acts or omissions of GEO/MTC. Rather, Plaintiffs seek to hold the United States *directly* liable for its failure to take action in response to the cocci epidemic, outside the scope of its relationship with GEO/MTC. Plaintiffs rely on a duty of the United States that arose before they arrived at Taft, which could not have been delegated in a practical sense; they point to other duties retained by the United States, which accrued after their arrival, and were separate from the day-to-day responsibilities that the parties agree were delegated to GEO/MTC. The district court erred in its independent contractor analysis when it failed to address these arguments.

## C.  The United States' Direct Liability

Whether the United States may be held liable under the FTCA for its own acts or omissions is a three-step inquiry. First, we decide whether state law, in this case, California law, would impose a duty of care on a private individual in a similar situation. 28 U.S.C. § 2674; *Autery*, 424 F.3d at 956. "The extent of the United States' liability under the FTCA is

generally determined by reference to state law." *Liebsack v. United States*, 731 F.3d 850, 855 (9th Cir. 2013) (quoting *Molzof v. United States*, 502 U.S. 301, 305 (1992)). Because Taft is located in California, we look to California law to evaluate Plaintiffs' claims. Second, if it would, we then look to the contract and the parties' actions to determine whether the United States retained some portion of that duty for which it could be held directly liable. *See Autery*, 424 F.3d at 957–59 (examining contractual language and parties' course of dealing to determine whether the duty was delegated); *McGarry*, 549 F.2d at 588 (describing contractual language and parties' past practices). Finally, even if it appears that the government delegated all of its duties to the independent contractor, we ask whether California law imposed any *nondelegable* duties on the government. *Yanez*, 63 F.3d at 874–75 (holding United States had nondelegable duty under California law); *McGarry*, 549 F.2d at 590 (holding United States had nondelegable duty under Nevada law).

In this case, California law imposes a general duty of care on the United States as a landowner. Section 1714 of the California Civil Code sets forth the basic policy governing landowner liability in Califonia. It states, in relevant part:

> Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself.

Cal. Civ. Code § 1714(a).  *See also Kinsman v. Unocal Corp.*, 123 P.3d 931, 938–39 (Cal. 2005) (quoting *Rowland v. Christian*, 443 P.2d 561, 568 (Cal. 1968)).

In California, landowners must act reasonably in the management of their property, with an awareness of "the probability of injury to others."  *Id.*  The state employs a strong presumption in favor of finding that landowners, and indeed all persons,  have a duty to use ordinary care to prevent injury to others:  "[I]n the absence of a statutory provision establishing an exception to the general rule of Civil Code § 1714, courts should create one only where 'clearly supported by public policy.'"  *Cabral v. Ralphs Grocery Co.*, 248 P.3d 1170, 1174 (Cal. 2011) (quoting *Rowland*, 443 P.2d at 564).[5]

---

[5] Although broad, this basic policy is not without its limits.  In *Rowland*, the California Supreme Court indicated several factors that, "when balanced together, may justify a departure from" the general duty of care imposed by § 1714.  *See Cabral*, 248 P.3d at 1174.  Foremost among the *Rowland* factors are the foreseeability of the harm and the burden to the defendant.  *Campbell v. Ford Motor Co.*, 141 Cal. Rptr. 3d 390, 404 (Ct. App. 2012), *as modified on denial of reh'g* (June 19, 2012) (quoting *Vasquez v. Residential Inv., Inc.*, 12 Cal. Rptr. 3d 846, 854 n.5 (Ct. App. 2004)).

These exceptions notwithstanding, California has historically held that § 1714 gives rise to a duty of care in a wide range of circumstances. In *Kinsman*, the California Supreme Court imposed a duty on landowners who hire independent contractors to warn invitees "of a latent or concealed pre-existing hazardous condition on [the] property," which the landowner knew or should have known about.  *Kinsman*, 123 P.3d at 933. In *Sprecher v. Adamson Co.*, 636 P.2d 1121 (Cal. 1981), the court applied *Rowland* to impose a duty of reasonable care on landowners to protect even individuals injured off-property from natural hazards.  *Id.* at 1128.

Plaintiffs allege that the United States, acting through the BOP, owed three specific duties to Taft prisoners. *First*, Plaintiffs argue the United States had a duty to warn prisoners about cocci. *Second*, Plaintiffs argue the United States had a duty to implement preventative measures to protect prisoners – particularly those with a heightened risk of developing the disseminated form of the disease – from contracting cocci. *Third*, Plaintiffs argue that by specifically excluding its independent contractors from efforts to develop a prevention policy in partnership with the CDC, the United States retained a duty to ensure the policy adequately protected prisoners from harm. We analyze each of these claims in turn.

### 1.  Duty to Warn

Although GEO and MTC provided some warnings to Plaintiffs in the form of flyers posted around the prison, the BOP itself never issued any warnings to prisoners regarding the risk of contracting cocci at Taft. In California, landowners may be held liable for a failure to warn invitees of hidden dangers where "(1) defendant [landowners] knew or reasonably should have known of a concealed, preexisting hazardous condition on their premises; (2) plaintiff . . . did not know and could not reasonably ascertain the condition; and (3) defendants failed to warn plaintiff." *Gravelin v. Satterfield*, 132 Cal. Rptr. 3d 913, 919 (Ct. App. 2011) (citing *Kinsman*, 123 P.3d at 940). Because cocci poses a hidden danger that Plaintiffs could not reasonably ascertain on their own, the United States had a duty to warn Plaintiffs of cocci's risks prior to their transfer to Taft.

In the district court, Plaintiffs presented uncontroverted evidence that the BOP knew Taft prisoners had an increased risk of cocci exposure and infection at least as of the late

1990s.  Yet until GEO/MTC passed that information on to prisoners, it is highly unlikely that Plaintiffs could have known about the increased likelihood of contracting cocci there, let alone the heightened danger facing African-American, Filipino, and immunocompromised individuals. A fungus that resides in the soil of the San Joaquin Valley, cocci is invisible and scentless; individuals are typically infected by breathing in dust, especially in windy conditions. Cocci is a classic example of a hidden danger, and the United States had a duty to warn Plaintiffs about it.[6]

To prove that the district court had jurisdiction over their claims, Plaintiffs must also show that the United States did not delegate its duty of care.  Here, the  United States could not have delegated its duty to warn Plaintiffs for a simple reason:  GEO and MTC have no power to assign prisoners or to protect any prisoners housed outside of Taft.  Thus, even if the United States could have delegated its duty to warn Plaintiffs once they arrived at Taft, it was not practically possible to delegate that portion of the government's duty arising prior to Plaintiffs' transfer to Taft.  We conclude that the independent contractor exception did not bar the district court from exercising jurisdiction over that portion of Plaintiffs' failure to warn claim covering the period of time prior to Plaintiffs' transfer to Taft.  Because the United States could not have delegated this duty to GEO/MTC, our inquiry ends at the second step of the analysis.

---

[6] The importance of the duty is made clear by assessing the consequences of breach:  The United States' failure to warn Plaintiffs about cocci prior to transfer likely kept them from taking any preventative action to protect themselves.  Plaintiffs were deprived of the opportunity to request transfer to a different facility or to seek alternative placement via the BOP's administrative grievance procedures.

### 2. *Duty to Build or Modify Protective Structures*

Once GEO/MTC warned Plaintiffs about cocci, the possibility of infection became a known hazard. Nevertheless, in California, a landowner's duty of care does not end with the requirement to warn individuals of hidden dangers. California relies on Restatement (Second) of Torts § 343A to define the duties of a possessor of land toward invitees, including those who encounter a known danger. According to the Restatement, "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness*." Restatement (Second) of Torts § 343A(1) (1965) (emphasis added). The California Supreme Court has expanded on this principle, explaining that "[t]here may be situations . . . in which an obvious hazard, for which no warning is necessary, nonetheless gives rise to a duty on a landowner's part to remedy the hazard because knowledge of the hazard is inadequate to prevent injury." *Kinsman*, 123 P.3d at 939. At Taft, even once Plaintiffs had been warned about cocci – and the hazard therefore became an "obvious" or known one – Plaintiffs' knowledge alone may not have been sufficient to prevent infection. As a landowner, the BOP had a duty to protect Taft's prisoners from cocci to the extent that they could not protect themselves.

That the United States had a duty to protect Plaintiffs is further bolstered by California's recognition of a special relationship between jailers and prisoners. The state imposes a heightened duty of care on jailers, due to prisoners' increased vulnerability while incarcerated. *Giraldo v. Cal. Dep't of Corrs. & Rehab.*, 85 Cal. Rptr. 3d 371, 382–88 (Ct.

App. 2008); *see also Lawson v. Superior Court*, 103 Cal. Rptr. 3d 834, 849–50 (Ct. App. 2010).[7]  The very fact of their incarceration means that prisoners are often helpless to protect themselves from harm.  Restatement (Second) of Torts § 320 cmt. b. (1965).  While California law specifically contemplates this duty as one to protect prisoners from the criminal acts of third parties, *see Giraldo*, 85 Cal. Rptr. 3d at 385, the same rationale also supports recognition of the special relationship in the context of environmental hazards endemic to the prison itself.  Indeed, because prisoners have so little control over their living quarters or daily schedules while incarcerated, they may be just as helpless to protect themselves from environmental hazards like cocci as they are to protect themselves from third parties.

As prisoners, Plaintiffs were particularly vulnerable to infection:  Even if Plaintiffs had been warned of the disease, they were unable to move to a different location, remodel their living quarters, or erect protective structures, such as covered walkways.  Thus, by placing prisoners at Taft, the BOP directly increased Plaintiffs' risk of harm.  Under California law, the United States had a duty to protect Plaintiffs from the risk of contracting cocci.

Under the second step of the analysis, we ask whether the United States delegated its duty to protect Plaintiffs from cocci.  To be sure, the United States delegated the day-to-day

---

[7] While the jailers in *Giraldo* and *Lawson* were governmental actors, nothing in the court's rationale would preclude the application of the same principle to non-governmental, *i.e.*, private-party, jailers, such as GEO/MTC.  *Cf. LaBarge v. Cty. of Mariposa*, 798 F.2d 364, 367 (9th Cir. 1986) ("Because the federal government could never be exactly like a private actor, a court's job in applying the [private person] standard is to find the most reasonable analogy.").

supervision and maintenance of Taft to its contractors. Indeed, once it became clear that Taft was experiencing a cocci epidemic, both GEO and MTC implemented certain responsive measures. In addition to increasing the frequency of maintenance tasks like dusting and changing air filters, GEO/MTC posted flyers warning prisoners that they were at risk of contracting cocci. Nevertheless, the preventative measures taken by the independent contractors were not sufficient to satisfy the BOP's own duty to protect prisoners under California law.

Plaintiffs assert that in addition to day-to-day measures, the United States had a duty to build or modify structures to reduce prisoners' exposure to the cocci-laden dust of the San Joaquin Valley. Specifically, Plaintiffs claim that construction of covered walkways could have protected them from exposure to the dust. And while the BOP delegated most day-to-day activities to GEO/MTC, the BOP expressly reserved at least one right to itself: the right to construct new buildings or modifications of or additions to existing buildings. The United States' contracts with GEO and MTC state that "[n]o modifications or additions to existing buildings, mechanical or utility systems shall occur (other than routine maintenance or replacement of components) without prior approval of the [government]." Further, "[t]he government reserves the right to construct additional buildings on its property and/or expand the capacity of existing buildings. The contractor shall cooperate to the fullest extent possible should the government exercise this right."[8] The plain language of the contract indicates that the

---

[8] Although both contracts with GEO and MTC were filed in the district court under seal, the provisions of the contracts have been referred to and quoted repeatedly in the pleadings and briefs filed by the parties on the

BOP retained control over construction at Taft, which presumably would include the construction of covered walkways, or the construction of other preventative structures on the land. In retaining this power, the BOP also retained the *duty* to construct such structures, should it become necessary to do so. To the extent that Plaintiffs allege that the BOP was negligent in failing to construct covered walkways or other protective structures, the independent contractor exception to the FTCA does not bar the district court from considering their claim. The analysis can be resolved at the second step. The government may be held directly liable for its failure to act.

### 3. *Duty to Develop an Adequate Cocci Prevention Policy*

Finally, the BOP had a duty, under the larger umbrella of its duty to protect Plaintiffs from cocci, to develop a preventative policy responsive to the cocci outbreak.[9] As previously discussed, the BOP had a duty, as a landowner and jailer, to protect vulnerable prisoners in its charge from foreseeable harm, because prisoners unable to control the particulars of their daily lives are "deprived of the normal opportunity to protect [themselves] from harm." *Giraldo*, 85 Cal. Rptr. 3d at 386. Once it became clear that Taft was

---

public record. The Court, therefore, deems these provisions of the contracts as tantamount to having been unsealed by consent.

[9] While we are, of course, aware that the FTCA includes a discretionary function exception, *see* 28 U.S.C. § 2680(a); *United States v. Gaubert*, 499 U.S. 315, 322 (1991), this exception was not invoked by the United States in its motions to dismiss. We therefore do not reach the issue and express no view on it because it was neither raised nor briefed by the parties.

experiencing an outbreak of cocci, the BOP began to work with the CDC to develop a policy for the prevention and treatment of cocci in prisoners. This was consistent with its duty as a landowner and jailer under California law. In the instant case, not only was the harm – the likelihood of infection absent preventative measures – foreseeable to the BOP, but the BOP actually took preliminary steps to execute its protective duty. Thus, the BOP's status as a landowner and jailer gave rise to a duty to protect Taft prisoners from harm, including by developing an adequate cocci prevention policy.

Although the United States delegated the general duty to oversee healthcare at Taft to GEO/MTC, its actions make clear that it chose to retain the specific duty to develop a policy for the prevention and treatment of cocci. Plaintiffs presented evidence in the district court that the BOP took upon itself the task of developing a policy in response to the cocci outbreak. The BOP also went a step further, specifically directing that its contractors be excluded from development of this policy. In so doing, the BOP expressed its intent to retain control over this aspect of its duty. *See Yanez*, 63 F.3d at 875 (finding jurisdiction under FTCA where government failed to exercise retained right to order correction of safety violations). Thus, the independent contractor exception to the FTCA does not bar the district court from exercising jurisdiction over Plaintiffs' third claim.[10]

---

[10] As with the duties discussed above, we need not decide whether this duty was nondelegable because the United States expressly retained a relevant portion of its duty to Plaintiffs.

## III.

Plaintiffs have met their burden to show that the independent contractor exception does not bar the district court's subject matter jurisdiction under the FTCA. The government owed a duty of care to Plaintiffs under California law, which generally assumes that landowners have a duty to exercise reasonable care in the ownership and management of property. In this case, the government's duty was underscored by the special relationship that California recognizes between jailer and prisoner.

The BOP's duty to warn prisoners before transferring them to Taft arose outside of the scope of its contractor relationship with GEO/MTC, and therefore is not barred by the independent contractor exception. Further, the BOP did not delegate all of its duties to GEO/MTC, even once prisoners arrived at Taft. Instead, it retained both the exclusive right to construct new buildings and the exclusive right to make modifications to existing buildings. The BOP also explicitly excluded its contractors from participating in the development of a cocci prevention policy. As to these claims, the independent contractor exception to the FTCA does not bar the district court's exercise of subject matter jurisdiction.[11]

In each of these cases, the district court's dismissal of Plaintiffs' complaints under the independent contractor exception to the FTCA is reversed to the extent dismissal is inconsistent with this opinion, and these cases are remanded

---

[11] On remand, the district court should grant Plaintiffs leave to amend their complaints to conform to this Opinion. *See* footnote 2, *supra*.

to the district court for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**