**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-6774**

JASON KREMBEL, Executor of the Estate of Michael L. Krembel,

Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Louise W. Flanagan, District Judge.  (5:16-ct-03018-FL)

Argued:  October 28, 2020                    Decided:  December 1, 2020

Before KING, WYNN, and THACKER, Circuit Judges.

Affirmed by unpublished opinion.   Judge Thacker wrote the opinion, in which Judge King joined.  Judge Wynn wrote a dissenting opinion.

**ARGUED:**  Bruce W. Berger, KNOTT & BOYLE, LLP, Raleigh, North Carolina; James B. Craven, III, Durham, North Carolina, for Appellant.  Rudy E. Renfer, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** Robert J. Higdon, Jr., United States Attorney, Joshua B. Royster, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

THACKER, Circuit Judge:

Jason Krembel ("Appellant"), representing the estate of Michael L. Krembel ("Krembel"), appeals the district court's grant of summary judgment on his Federal Tort Claims Act ("FTCA") claim. Appellant contends that the Bureau of Prisons ("BOP") was negligent because Krembel did not receive timely, necessary surgery while incarcerated in the Federal Correctional Complex at Butner ("FCC Butner").

We conclude an independent contractor -- not the BOP -- was responsible for scheduling Krembel's surgery pursuant to a contract with FCC Butner. Therefore, we affirm the judgment of the district court that the United States is not liable for Krembel's injuries. However, we conclude that rather than granting summary judgment, the district court should have dismissed the suit for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

I.

A.

Krembel's Care During Imprisonment

The BOP transferred Krembel from the Federal Correctional Institution at Fort Dix, New Jersey to FCC Butner after he was diagnosed with squamous cell carcinoma of his scalp on June 6, 2013. Inmates at FCC Butner receive specialty medical care pursuant to a contract between FCC Butner and the University of Massachusetts Medical School

2

("UMass").[1] On July 8, 2013, Krembel was examined by Dr. Stanley Katz, an independent contractor,[2] who "strongly recommend[ed]" Krembel receive Mohs micrographic surgery "as soon as possible." J.A. 214.[3] By precisely targeting small areas of cancerous skin, Mohs surgery does minimal damage to surrounding healthy tissue and prevents more invasive future surgeries. The surgery could not be conducted, however, if the carcinoma was permitted to spread beyond a certain threshold. It is clear Dr. Katz assumed that the surgery could be done quickly because he noted Krembel "[would] return for follow up in approximately one month for evaluation, assuming the Mohs surgery is done." *Id.* Dr. Katz discussed his recommendation with Krembel's family physician, who concurred with the suggestion. Two days after his examination, on July 10, 2013, the BOP approved a surgical consultation for Krembel.

Despite Dr. Katz's recommendation and the BOP's prompt approval, Krembel did not see a consulting surgeon until three months later, on October 15, 2013. The consulting surgeon, who was also an independent contractor,[4] agreed that the surgery had "the highest probability of local tumor control." J.A. 218. Of note, the consulting surgeon did not indicate that the carcinoma had spread so much that the surgery could not be conducted at

---

[1] UMass provides various medical care services, including administrative duties such as scheduling offsite appointments.

[2] Dr. Katz provided services as a contract physician pursuant to the contract between FCC Butner and UMass.

[3] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

[4] The consulting surgeon also provided services as a contract physician pursuant to the contract between FCC Butner and UMass.

3

that point. The BOP was provided with the consulting surgeon's notes, and the BOP approved the surgery the same day. Nonetheless, Krembel was not seen again until nearly two months later, on December 2, 2013, two days after he expressed concern to a BOP clinical director. By that point, the cancer on Krembel's head had spread so much that he was no longer a candidate for Mohs surgery. As a result, Krembel underwent a series of more invasive surgeries and radiation treatment which ultimately left him with complications including physical deficiencies and disfigurement.

B.

Relationship Between the BOP and UMass

Pursuant to the contract between FCC Butner and UMass, UMass provides physicians and other non-medical staff to deliver a variety of medical services to inmates. The BOP has the authority to approve or deny referrals for treatment recommended by UMass contracting physicians, but, significantly, it is undisputed that neither FCC Butner nor the BOP exercise day-to-day control over the medical judgment of the UMass contractors. Likewise, the BOP does not exercise control over UMass scheduling of offsite medical appointments.

FCC Butner asserts that it does "not have the time, resources, or available staff, to effectively undertake the responsibilities currently provided by UMass and the contract onsite scheduling coordinators." J.A. 149. Further, "the onsite scheduling coordinator is compensated by UMass." *Id.* at 146. In order for an inmate to receive specialty treatment at an offsite facility, BOP employees enter a consultation request into the BOP electronic medical records system. The consultation request "is then forwarded to a BOP employee

4

who is responsible for ensuring that the request is reviewed by the institution's Utilization Review Committee ("URC")." *Id.* "Once the URC approves a consultation request, the request is then forwarded to the UMass contract onsite scheduling coordinator to schedule the appointment with the specialty provider." *Id.* at 147. Pursuant to the contract, "UMass selects [the] onsite scheduling coordinator who is responsible for the scheduling of all offsite community medical appointments." *Id.* at 146. UMass is also responsible for cancellations and rescheduling offsite specialty appointments.

## C.

### Procedural History

Krembel filed a negligence action pursuant to the FTCA, asserting that the BOP negligently delayed his treatment.[5] The Government filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Government argued that Krembel's claims were barred by the independent contractor exception to the FTCA. Concluding the record should be more fully developed, the district court denied the motion to dismiss. Discovery ensued.

The contract between FCC Butner and UMass came to light during discovery. Because the contract identified UMass as the party solely responsible for scheduling offsite appointments, the Government filed a motion for summary judgment, renewing its independent contractor exception argument. Relying on the newly discovered contract, the district court granted the motion for summary judgment. The district court concluded that

---

[5] Krembel died during the pendency of this appeal, and Appellant took over the case.

5

UMass was responsible for any delays in Krembel's treatment. Therefore, the district court held it did not have subject matter jurisdiction because the independent contractor exception to the FTCA applied.

## II.

Determining the appropriate standard of review requires analysis of the procedural disposition of the case. The district court erred when it simultaneously concluded that it lacked jurisdiction to hear the claim and granted the Government's motion for summary judgment. *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995).

If the independent contractor or discretionary function exceptions apply to an FTCA claim, then the presiding court lacks subject matter jurisdiction to hear the claim. *See Williams*, 50 F.3d at 304. Thus, in *Williams*, we "observe[d] that rather than granting summary judgment pursuant to Rule 56(c), the district court should have dismissed the suit for want of jurisdiction under Rule 12(b)(1) if the United States [was] not liable for Williams' injury" pursuant to FTCA exceptions. *Id.* The distinction has "procedural ramifications" that are "more than academic." *Id.* "[D]ismissal under Rule 12(b)(1) has two consequences: one, the court may consider the evidence beyond the scope of the pleadings to resolve factual disputes concerning jurisdiction; and two, dismissal for jurisdictional defects has no *res judicata* effect." *Id.*

"If, therefore, [UMass] is an independent contractor," and is the party responsible for the alleged breach, "the United States has not waived its sovereign immunity; accordingly the case should be dismissed for want of jurisdiction under Rule 12(b)(1)." *Williams*, 50 F.3d at 304. The same principle applies regarding the discretionary function.

6

*See id.* at 305. In *Williams*, we concluded that the independent contractor and discretionary function exceptions both applied and, thus, affirmed and modified the district court's order to a Rule 12(b)(1) dismissal. *See id.* at 311.

Here, because the district court held it lacked jurisdiction pursuant to the FTCA independent contractor exception, we review the decision pursuant to a Rule 12(b)(1) standard. The standard of review for a Rule 12(b)(1) dismissal is de novo. *See Robb v. United States*, 80 F.3d 884, 887 (4th Cir. 1996).

III.

A.

By passing the FTCA, Congress waived the United States' sovereign immunity under limited circumstances where injury is "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1); *see also United States v. Sherwood*, 312 U.S. 584, 586 (1941) (explaining that the United States is immune from suit unless it waives that immunity and consents to be sued). But the FTCA explicitly does not permit suit for liability resulting from the actions of "any contractor with the United States." 28 U.S.C. § 2671. Thus, "Congress has not waived the sovereign immunity of the United States for injuries resulting from the actions of independent contractors performing work for the government." *Robb v. United States*, 80 F.3d 884, 887 (4th Cir. 1996). The FTCA waiver of immunity is strictly construed. *See id.* Consequently, "ambiguities are resolved in favor of the sovereign." *Id.*

7

The Supreme Court has instructed that the independent contractor exception should be applied when "the day-to-day operations of the contractor's facilities [are] in the hands of the contractor." *Logue v. United States*, 412 U.S. 521, 529 (1973). We have strictly construed this principle, explaining the Government's control over the "primary activity contracted for" is the relevant analysis. *Williams v. United States*, 50 F.3d 299, 307 (4th Cir. 1995). Indeed, the "critical element in distinguishing an agency from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'" *United States v. Orleans*, 425 U.S. 807, 814 (1976) (quoting *Logue*, 412 U.S. at 528).

## B.

Here, the contract between FCC Butner and UMass establishes that the UMass scheduling coordinator is an independent contractor who is solely responsible for scheduling offsite care. Indeed, a BOP clinical director declared that pursuant to the contract, the BOP does not compensate the UMass scheduling coordinator and does not oversee the scheduling coordinator or the scheduling process. Specifically, the BOP clinical director declared, "It is the responsibility of UMass [to] establish administrative systems to ensure smooth scheduling, administration of procedures, and reporting and transcription of results for appointments." J.A. 148. "The contract between UMass and FCC Butner does not require the FCC Butner medical staff to follow-up with the onsite scheduling coordinator once a request for an appointment has been transmitted to the scheduling coordinator." *Id.*

Contrary to Appellant's assertion that no newly discovered evidence warranted the district court's decision, the contract and declaration are critical developments in the record that occurred during discovery, especially when combined with the fact that the BOP employees promptly reviewed and approved the recommendations for Krembel to receive the recommended surgery. Because the contract does not provide for BOP control or supervision over the UMass scheduler's contractual duties, we have little trouble concluding that UMass was acting as an independent contractor. Furthermore, the evidence in the record demonstrates that the UMass scheduling coordinator was the party responsible for scheduling Krembel's surgery, albeit upon the BOP's approval.

Because the BOP diligently discharged its contractual duties when it promptly approved the recommended surgery while the UMass scheduling coordinator delayed scheduling such surgery, UMass was the party at fault here. Thus, the United States cannot be held liable pursuant to the independent contractor exception to the FTCA.

C.

Appellant attempts to avoid this conclusion primarily by relying on the BOP's statutory and constitutional duties. Appellant essentially argues that because the standard of care for the BOP is fixed by 18 U.S.C. § 4042 and the Eighth Amendment, the BOP retained a duty owed to Krembel beyond the duties outlined in the contract with UMass. Specifically, Appellant relies on § 1983 cases and argues that allowing the BOP "to contract out all services which it is constitutionally obligated to provide . . . leave[s] its citizens with no means for vindication of those rights." Opening Br. 15–16 (quoting *West*

*v. Atkins*, 487 U.S. 42, 56 n.14 (1988)).  But these arguments mistake the nature of an FTCA claim as well as the independent contractor exception.

1.

Regarding the Eighth Amendment, Appellant correctly argues "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoner of the means to vindicate their Eighth Amendment rights."  *West*, 487 U.S. at 56.  But this does not necessarily lead to a cognizable FTCA claim.  The Supreme Court explained the distinction between FTCA claims and constitutional tort claims in *FDIC v. Meyer*, 510 U.S. 471 (1994).  Indeed, to be actionable pursuant to the FTCA, the claim must allege "the United States would be liable to the claimant as a private person in accordance with the law of the place where the act or omission occurred.  A constitutional tort claim . . . could not contain such an allegation."  *Meyer*, 510 U.S. at 477–78 (internal quotation marks omitted).  Therefore, "the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims."  *Id.* at 478.

2.

Regarding the BOP's statutory duty, Appellant's theory of the case would significantly undermine the independent contractor exception.  Appellant claims that because the BOP has a statutory duty to provide care to its inmates, the BOP has a duty to "follow up" with its independent contractors even though the BOP acted diligently in approving the surgery and the contract between UMass and the BOP required no BOP oversight of the UMass scheduler.  Taken to its logical conclusion, such a theory would

10

effectively disallow the Government from hiring independent contractors because the Government would be obligated to exercise supervision and control over its independent contractors. Requiring such supervision is at odds with the definition of an independent contractor. *See Orleans*, 425 U.S. at 814 (emphasizing that the "critical element in distinguishing an agency from a contractor is the power of the Federal Government to control the detailed physical performance of the contractor" (internal quotation marks omitted)). Thus, our mandatory "broad construal" of the independent contractor exception does not allow us to hold that a general statutory duty cannot be effectively discharged by hiring an independent contractor and then diligently acting pursuant to the responsibilities outlined in the contract.[6] *See Robb*, 80 F.3d at 887. By the same reasoning, Appellant's attempt to rely on the BOP's policies that incorporate the general statutory duty is equally misplaced.

3.

However, the existence of a contract between FCC Butner and UMass standing alone does not necessarily preclude a conclusion that the BOP was negligent regardless of the independent contractor exception. As Appellant's reliance on *Knowles v. United States*

---

[6] The district court also held the discretionary function exception precluded a claim that the BOP was negligent in contracting with UMass in the first instance. *See Krembel v. United States*, No. 5:16-CT-3018-FL, 2019 WL 1429585, at *6 (E.D.N.C. Mar. 29, 2019) (citing 28 U.S.C. § 2680(a)). Appellant does not challenge this determination on appeal. Nonetheless, we find the fact that the discretionary function exception contemplates that statutory duties will be discharged by contracting with independent third parties persuasive in reaching our independent contractor conclusion. *See Williams*, 50 F.3d at 310 (emphasizing that the "decision to hire an independent contractor . . . is precisely the type of decision that the exception is designed to shield from liability").

illustrates, the BOP could still be negligent in upholding its end of the contract. No. 5:12-CT-3212-F, 2015 WL 13214314 (E.D.N.C. Dec. 14, 2015). In *Knowles*, the plaintiff lost all vision in his right eye because the BOP failed to deliver the plaintiff to an appointment that had been scheduled by an independent contractor working for the BOP. *See Knowles*, 2015 WL 13214314 at *2. Thus, in *Knowles* the BOP failed to discharge its duty. In contrast, here, the BOP acted diligently while the independent contractor failed to adequately discharge its duty. Given these facts, we agree with the district court that *Knowles* is distinguishable from the present case.

4.

Finally, Appellant argues that the district court's rejection of the Government's independent contractor exception argument in the initial motion to dismiss constituted the law of the case that could not be subsequently overruled. But the law to which Appellant refers explicitly emphasized that the government's independent contractor exception argument could be renewed "on a more developed record in a fully briefed motion for summary judgment." *Krembel v. United States*, No. 5:16-CT-3018-F, 2017 WL 1058179, at *3 (E.D.N.C. Mar. 20, 2017). Furthermore, as the Government points out, we have recognized "denials of motions to dismiss[] remain open to trial court reconsideration, and do not constitute the law of the case." *Plotkin v. Lehman*, No. 98-1638, 1999 WL 259669 at *1 (4th Cir. Apr. 30, 1999) (per curiam) (quoting *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994)). Therefore, the initial denial of the Government's motion to dismiss did not preclude the district court's subsequent decision to grant summary judgment.

12

## IV.

For the reasons set forth herein,[7] the decision of the district court is modified to a

Rule 12(b)(1) dismissal without prejudice and

*AFFIRMED*.

---

[7] In closing, we note that while briefing and arguing the case, Appellant repeatedly noted that the contract between FCC Butner and UMass was essentially hidden. Indeed, the contract was filed under seal in this case. It is unclear to us how claimants could successfully bring their claims against negligent independent contractors if government contracts are not open and notorious. Even though dismissing an FTCA claim does not necessarily disturb any potential state law claim against an independent contractor, a meritorious claim could be lost if such a contract could not be discovered until after the statute of limitations has run. It is equally likely that the independent contractor would not be on notice sufficient to allow a pleading amendment to relate back to the original complaint. *See* Fed. R. Civ. P. 15(c)(1)(C). The Government should be concerned with this inequity, even if the discretionary function insulates it from liability "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

WYNN, Circuit Judge, dissenting:

While I agree with my colleagues in the majority that the independent-contractor exception prevents the estate of Michael Krembel from holding the Bureau of Prisons liable for the failure of UMass to properly schedule Krembel's much-needed surgery, I believe that the Bureau of Prisons violated the statutory duty of care it owed Krembel. Accordingly, I must dissent.

The duty of care "owed by the Bureau of Prisons to federal prisoners is fixed by 18 U.S.C. § 4042, independent of an inconsistent state rule." *United States v. Muniz*, 374 U.S. 150, 164–65 (1963); *see also Parrott v. United States*, 536 F.3d 629, 636 (7th Cir. 2008) (same). In relevant part, § 4042 states that the Bureau of Prisons shall "provide suitable quarters and *provide for the safekeeping, care*, and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2) (emphasis added). Courts have interpreted § 4042 to require prison officials to exercise "ordinary diligence under the circumstances." *Johnson v. U.S. Gov't*, 258 F. Supp. 372, 376 (E.D. Va. 1966); *see also, e.g.*, *Abuhouran v. United States*, 595 F. Supp. 2d 588, 594 n.4 (E.D. Pa. 2009) (explaining that § 4042 requires the Government to "exercise ordinary diligence to keep prisoners safe and free from harm" (quoting *Jones v. United States*, 534 F.2d 53, 54 (5th Cir. 1976))); *Smith v. United States*, 207 F. Supp. 2d 209, 214 (S.D.N.Y. 2002) (same).

Importantly, the Bureau of Prisons owes this duty of care to prisoners irrespective of its decision to contract with independent contractors to provide certain services. *See Edison v. United States*, 822 F.3d 510, 518 (9th Cir. 2016) ("[T]he independent contractor

14

exception . . . has no bearing on the United States' FTCA liability for its *own* acts or omissions."). Accordingly, the Bureau of Prisons owed Krembel a duty of ordinary diligence under the circumstances.

Here, separate and apart from UMass's failure to properly schedule Krembel's surgery, I believe the Bureau of Prisons breached its duty to act with ordinary diligence under the circumstances. The basic facts are remarkable. Krembel was supposed to undergo surgery in the summer of 2013, but by the time he was finally seen by a doctor in *December* 2013, his cancer had spread so significantly that he was no longer eligible for the needed surgery. During those long intervening months when Krembel was not receiving the medical care he needed, the cancerous mass on his head "gr[ew] quite rapidly," causing a painful wound to emerge from his scalp, spewing forth a "continuous[,] smelly discharge" that required him to receive medical care every morning. J.A. 72, 223, 342. During these daily appointments with the medical staff, Krembel regularly requested the surgery he had been prescribed. [J.A. 315, 342.] Yet the Bureau of Prisons's medical staff apparently did nothing at all to determine the cause of delay in his care, much less to remedy it.

This months-long period of delay and indifference is made all the more remarkable by several circumstances that, one hopes, will prove unique to this case. First, the Federal Medical Center at Butner, where Krembel was incarcerated, is a specialized medical center whose very purpose is to address the medical needs of its inmates. Second, Krembel was suffering from a particularly aggressive form of *cancer*. *See Balter v. United States*, No. 3:09-cv-1409, 2014 WL 1365905, at *26 (M.D. Pa. Apr. 7, 2014) (finding the Bureau of Prisons's duty of care to be "heightened where an inmate is known to have a rare condition

15

requiring special treatment"). Third, there was no dispute that Mohs surgery was the best way to treat Krembel's cancer and that he needed it as soon as possible. Considering these circumstances, I would hold that the Bureau of Prisons did not exercise ordinary diligence under the circumstances when it moved with alacrity to approve Krembel's requested consultations—but then did nothing further to ensure that he received the surgery he needed while his cancer spread and worsened.

In response to Krembel's argument that the Bureau of Prisons breached its statutory duty of care, the majority concludes that the Bureau of Prisons can have no general "duty to 'follow up'" on its independent contractors because such a duty "[t]aken to its logical conclusion. . . would effectively disallow the Government from hiring independent contractors." Maj. Op. at 10–11. I agree that foisting a general "duty to follow up" on the Bureau of Prisons would be inconsistent with the independent-contractor exception and that in many—perhaps most—cases, the Bureau of Prisons's "general statutory duty can[] be effectively discharged by hiring an independent contractor and then diligently acting pursuant to the responsibilities outlined in the contract." *Id.* at 11. However, it does not follow from the premise that the Bureau of Prisons has no *general* "duty to follow up" that it reasonably cared for Krembel, as required by law. The facts of this matter show that the Bureau of Prisons's treatment of Krembel fell short of ordinary diligence under the circumstances. Accordingly, I respectfully dissent.

16